[No. 8,594. Department One.—March 19, 1885.]

JOHN SPOTTISWOOD, APPELLANT, *v.* JAMES C. WEIR
ET AL., RESPONDENTS.

EVIDENCE—HEARSAY—DECLARATIONS TO DISCREDIT OF WITNESS.—Evidence of declarations of a third person, tending to discredit the testimony of a witness, is hearsay and inadmissible.

ID.—CONTENTS OF DEED.—Where the existence of a deed is the subject matter in controversy, evidence of the declarations of a person not a party to the action as to its contents is inadmissible.

ID.—PRESS COPY OF WRITING.—Until the non-production of an original
writing has been properly accounted for, a letter press copy thereof
is inadmissible in evidence.

ID.—EXPERT—COMPARISON OF HANDWRITINGS.—An expert witness cannot
testify as to the genuineness of a disputed writing upon a comparison
of a genuine writing with a press copy of the writing whose genuineness
is disputed.

FINDINGS—EQUITABLE ACTION—NEW TRIAL.—In equity actions, findings of
the jury are advisory only, and until the court has made findings, there
is no decision upon which to base a motion for a new trial.

NEW TRIAL—STATEMENT—BILL OF EXCEPTIONS.—A statement on motion
for a new trial and a bill of exceptions may be incorporated in one
paper without invalidating either.

APPEAL from a judgment of the Superior Court of the city
and county of San Francisco, and from an order refusing a new
trial.

Action to quiet title. The facts are sufficiently stated in the
opinion of the court.

*Doyle, Barber & Scripture,* for Appellant.

The press copy of the disputed letter was inadmissible. (1
Greenleaf's Evidence, §§ 113, 114; *Innis* v. *Steamer Senator,* 1
Cal. 459; *Gerke* v. *Steam Nav. Co.,* 9 Cal. 221; *Garfield* v.
*Knights Ferry Co.,* 14 Cal. 36; *Mechanics' Bank* v. *N. Y. &
N. H. R. R. Co.,* 13 N. Y. 599; *Michigan Cent. R. R.* v. *Gou-
gar,* 55 Ill. 503; *Mason* v. *Gray,* 36 Vt. 313; *Franklin Bank*
v. *Steward,* 37 Me. 526.)

*Shafter, Parker & Waterman,* for Respondents

ROSS, J.—Each of the parties to this suit—plaintiff and de-
fendants—claim under a deed from one August Hemme, who
in March, 1878, executed to the plaintiff a deed, which con-
veyed to him the property in question, unless he had previously
conveyed it to the wife of defendant Weir. The question in
the case thereof is, whether or not Hemme had previously con-
veyed the property to Mrs. Weir. It is a conceded fact, that
there was no deed of record to Mrs. Weir, but it is a further
admitted fact that at the time of the conveyance to the plain-
tiff, Mr. and Mrs. Weir were in possession of the property, re-
siding there with their family. Some further facts appear with-

out dispute, and they are in substance these : In 1877, Hemme and the defendant James C. Weir were, and for some years had been, engaged in building speculations, and the house in controversy was one of those erected by them. Hemme was the moneyed man, and he held the titles to the various properties; he received the proceeds of the sales, kept the accounts of the business, and rendered monthly statements to Weir. One Chambers was his clerk, and one Land his book-keeper. In May, 1877, Weir was largely indebted to Hemme on account of their transactions. On the 3d of May of that year, the house in controversy being completed and ready for sale at the price of $13,000, Weir told Hemme that he would take it to his own account at that sum. Hemme acceded to the proposition, and instructed his clerk, Chambers, to draw a deed for the house, and instructed his book-keeper, Land, to debit Weir $13,000 in the books of account. Chambers drew a deed to the property, which Hemme signed and acknowledged before F. O. Wegener, a notary public, and the sum of $13,000 was debited to Weir on the books. But who was the grantee in the deed, and whether or not it was ever delivered, are the important questions in the case, upon which plaintiff and defendants are at issue. On the part of plaintiff it is claimed that James C. Weir was the grantee, and that the deed never was delivered, and therefore never became operative; while, on the part of the defendants, it is contended that Mrs. Weir was the grantee, and that the deed was delivered, and that under it she went into possession of the property, and has so remained ever since; and further, that although the deed was not put on record, her possession was notice to the plaintiff of her title. Upon the trial of certain special issues, which were submitted to a jury in the court below, and the findings upon which, in favor of the defendants, were afterwards adopted by the court, certain rulings were made, which we think entitle the plaintiff to a new trial.

As has been observed, an important fact to be ascertained was whether the grantee of the deed in question was James C. Weir or his wife, Elizabeth Weir. After James C. Weir had testified that the deed was made to his wife, that it had been drawn by Chambers, and acknowledged and delivered by Hemme on the 3d day of May, 1877, and before any evidence

to the contrary had been given, he was permitted to testify, against the objection and exception of the plaintiff, that two weeks after the execution of the deed, Chambers wrote á note to Mrs. Weir in these words : " San Francisco, May 17, 1877. Mrs. Weir : If you will send me the deed made by August Hemme to you, I will insert ' wife of James C. Weir.' A. F. Chambers," and gave it to the witness to be delivered ; that he never delivered it, and after keeping it some time, returned it at Chambers' request to him ; but before doing so, had, on the advice of one Lawton (then deceased), who told him that he was dealing with a tricky man, taken the precaution to take a press copy of it, which he produced. The press copy of this alleged letter was, against the objection and exception of the plaintiff, and without any attempt to account for the loss of the original, permitted to be given in evidence ; and, subsequently, an expert witness, under like objection and exception, was permitted to testify from an examination of the press copy, that in his opinion the original of the copy was in the handwriting of Chambers.

The testimony of Weir, to the effect that Lawton told him he was dealing with a tricky man, was clearly inadmissible. It was hearsay, and tended to discredit the testimony of the person thus characterized. Nor was the testimony of Weir, to the effect that two weeks after drawing the deed Chambers wrote a note to Mrs. Weir, saying that if she would return the deed in question he would insert in it "wife of James C. Weir," admissible for any purpose, for it was the unsworn declaration of a stranger as to the contents of the deed. Yet it was the declaration of the man who acted as scribe in drafting the deed, and went to the very gist of the controversy. Chambers had been examined on behalf of the plaintiff in advance of the trial, under a commission, upon interrogatories settled by consent of the respective parties to the action, and in which was included no reference whatever to the alleged note of May 17, 1877. In his deposition, Chambers testified that the grantee in the deed was James C. Weir, and that the deed was not delivered at all, but was retained by Hemme, because the consideration was not paid. Of course, if Chambers' testimony was true, it should have operated a defeat of defendants' case. The alleged note

of May 17, 1877, the effect of which was directly at variance with his testimony, cut, therefore, a very important figure in the trial. The original of it was not produced, and its non-production not only not accounted for, but not a question was put to Chambers by Weir's counsel in respect to such letter, when he was examined as a witness under the commission. It is quite clear that the press copy of the letter was inadmissible, until the non-production of the original was properly accounted for. But further than this, an expert witness was given specimens of Chambers' handwriting, and was permitted to compare them with the press copy of the letter alleged to have been written by him to Mrs. Weir, and to give his opinion as to the genuineness of the original of the copy. This was not permissible under any rule with which we are acquainted. It is essential that the document whose genuineness is sought to be proved should itself be produced. When the disputed writing is produced, evidence resulting from a comparison of it with other proved or admitted writings is not regarded as evidence of the most satisfactory character, and by some courts is entirely excluded. It would be adding vastly to the danger of such evidence, to permit evidence to be given from a comparison of genuine writings with a press copy of the writing whose genuineness is disputed. Indeed, in this very case the expert, on cross-examination, testified that " it would be very dangerous to decide on a press copy, for sure."

The action here being on the equity side of the court, the verdict of the jury was but advisory; and until the findings of the jury were adopted by the court, there was no decision, and, therefore, nothing upon which to base a motion for a new trial. For this reason the notice given by the plaintiff April 9, 1881, was premature and ineffectual, and was, therefore, properly abandoned. (*Bates* v. *Gage*, 49 Cal. 128.)

Within proper time after the decision of the court, a notice of motion for a new trial in due form was given, which was followed, within the time duly extended for that purpose, by a statement on motion for new trial and a bill of exceptions. The fact that the statement and bill of exceptions were incorporated in one paper, does not render either invalid. Being prepared within due time, and being properly settled by the

judge, these papers may be as well considered when presented together as when separately presented.

Judgment and order reversed, and cause remanded for a new trial.

McKINSTRY, J., and McKEE, J., concurred.