[S. F. No. 761.   In Bank.—July 22, 1899.]

## LIVERPOOL, LONDON AND GLOBE INSURANCE COMPANY, Respondent, *v.* SOUTHERN PACIFIC COMPANY, Appellant.

NEGLIGENCE—DEFECTIVE SPARK-ARRESTER—SUBROGATION OF FIRE INSURANCE COMPANY.—A fire insurance company which has been compelled to pay insurance upon premises destroyed by fire caused by a defective spark-arrester upon an engine, may, by subrogation to the rights of the owner of the premises, compel the railroad company to reimburse it for the amount of such payment if there was no contributory negligence upon the part of the owner.

ID.—CONTRIBUTORY NEGLIGENCE—USE OF REASONABLE PRECAUTIONS BY OWNER—QUESTION FOR JURY.—Where it appears that the owner of the burned premises did not directly know that the engine used was dangerous, and did not invite the use of that particular engine, and used counter-precautions against the risk of fire by employing a man to watch and guard against the danger, the question whether those precautions were such as reasonable care would dictate is for the jury.

ID.—DEBATABLE QUESTION OF PRUDENCE.—If it is fairly debatable whether or not the ower of the premises acted with ordinary prudence, in the light of the knowledge possessed, the question of contributory negligence is not determined by the result, but is one of fact for the jury.

ID.—RELATION OF ACTS TO REQUIRED CARE.—The question whether acts of the owner came up to or fell short of the degree of care required of him by law, is one of fact for the jury.

ID.—HYPOTHETICAL INSTRUCTION AS TO ORIGIN OF FIRE—PROVINCE OF JURY.—Where the evidence as to the cause and origin of the fire was circumstantial, an instruction grouping the facts in hypothetical form, and telling the jury that if they believe these facts to be established by the evidence, a *prima facie* case is made out which would warrant the jury in finding that the engine of the defendant caused the fire, does not invade the province of the jury, and is not argumentative or unfair.

ID.—INSTRUCTION AS TO PROBABILITY OF ORIGIN.—A portion of such instruction that "if, upon the whole evidence, and taking into

consideration all the conditions and circumstances surrounding the fire, you find it to be more probable that the fire was caused by sparks escaping from the swing engine than from any other cause, your finding upon that point, to wit, the origin of the fire, should be accordingly," does not throw the question into the domain of conjecture and surmise; but the question as to the probability of the origin of the fire is properly left to the jury to determine from the circumstantial evidence.

ID.—INSTRUCTION AS TO COUNTER-PRECAUTIONS—ASSUMPTION OF UNDISPUTED FACT.—Where the court properly left it to the jury to determine the reasonable sufficiency of the counter-precautions used by the owner of the property, the assumption in the instruction to the jury of the undisputed fact that counter-precautions were used, is not objectionable, and could not injure the defendant.

ID.—EVIDENCE—PROOFS OF LOSS.—The proofs of loss· made by the owner of the insured buildings which were destroyed by fire were admissible in evidence for the limited purpose of establishing the liability of the insurance company plaintiff to such owner for the moneys paid upon the insurance, for which reimbursement was claimed from the defendant.

ID.—STIPULATION—OFFER OF DEFENDANT—INSTRUCTION.—The admission in evidence of a stipulation between the parties, which upon its face is made admissible in evidence, and which contained a declaration that defendant had offered to pay the owner of the premises a large sum in addition to the insurance money, is not prejudicial to the defendant, where the court instructed the jury, at defendant's request, that said offer was of itself neither an admission that the defendant had been guilty of negligence, nor that it had caused the fire, nor that anything was due to the owner of the premises, or the plaintiff, by reason of the fire.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. William R. Daingerfield, Judge.

The facts are stated in the opinion of the court.

Reddy, Campbell & Metson, and William F. Herrin, for Appellant.

Van Ness & Redman, for Respondent.

HENSHAW, J.—Appeals from the judgment and from the order denying the defendant a new trial.

On July 15, 1893, the Sierra Ice Company was the owner of certain icehouses situated in Nevada county. Upon that day

three of its houses, which were insured with plaintiff for fifteen thousand dollars, were totally destroyed by fire. The ice company presented its claim of loss for forty-four thousand dollars. The plaintiff paid the full amount of insurance, and after payment, being subrogated to the ice company, made demand upon the Southern Pacific Company for reimbursement, contending that the fire had been negligently set by the Southern Pacific Company in operating one of its locomotive engines. The Southern Pacific Company denied all responsibility for the fire, and refused payment. Plaintiff requested the ice company to join with it in an action against the Southern Pacific Company for a recovery. The ice company refused to do so, and was made a defendant in this action. During the trial of the action, however, the ice company, by stipulation of the parties, was dismissed from the case. The verdict and judgment were for the plaintiff.

The three icehouses which were destroyed were situated about a quarter of a mile from the main track of the railroad company. A sidetrack was run upon the premises of the ice company by the railroad company at the expense of the ice company. It was built for the convenient transportation of freight to and from the ice company's works. The engines and cars belonged to the railroad company, and were operated exclusively by it. The icehouse which first caught fire stood close to the track, so that ice might be readily loaded from it upon the cars. Upon the day of the fire the railroad company was engaged in removing certain cars which had been loaded with ice from this icehouse. In so doing the train men made a "flying switch." In making this switch the engine was started suddenly forward, pulling one of the cars away from the others and running with it on one track, leaving the other cars to follow more slowly behind and take another track after the engine and first car had passed. After the engine had made this sudden start in front of the icehouse, and had run some distance down the track, a fire was observed on the roof of the icehouse, just above the eaves, and exactly opposite where the engine had made its start. From these facts and from others which appear in the case, and which will be set forth as occasion may require, plaintiff contends that the evidence sufficiently establishes that the fire was

caused by the sparks discharged from the engine and falling upon the roof of the building. After the fire the engine was sent to the round-house and the spark arrester above the fire box of the engine was examined. The examination revealed that the screen of the spark arrester had a hole in it about two inches by six in dimension, which would allow the escape of live cinders and sparks. The superintendent of the ice company had heard that this engine had previously caused other fires, and had detailed a man to follow the engine as it ran in and out of the premises, and to be on the lookout and extinguish any fire that might be set. The fact that the spark arrester was imperfect does not appear to have been known to anybody until after its examination subsequent to the fire. Three different engines were from time to time employed in operating the "swing train" upon the ice company's premises, but the engine which was upon the premises at the time of the fire was the one most frequently used.

Appellant's first contention is, that the evidence establishes that the ice company knew the danger to which its property stood liable from the use of the engine, and that with this knowledge, having invited the engine upon the premises, and voluntarily exposed its property to the risk, it is precluded from recovering for an injury which directly results from such exposure. That the principle of law here declared is sound there can be no question, but that the facts in this case were so well established in appellant's favor as to bring the ice company within the application of the principle is a very different matter. Appellant relies particularly upon the case of *Marquette etc. R. R. Co. v. Spear,* 44 Mich. 169; 38 Am. Rep. 242. The facts in that case were that plaintiffs owned a warehouse and a quantity of hay stored near it on premises of their own, and that upon these premises they had caused to be laid a track upon which railroad engines and cars had been running for their accommodation for a long time before the fire. When plaintiffs had occasion for cars, they had an arrangement with the railroad company to draw them in and take them out. A particular engine belonging to the railroad company was made use of for this purpose, and about the time of the fire it was going in and coming out several times a day. One of the plaintiffs

testified that on the occasion of the fire the engine went in and out, throwing sparks. He was sitting in his office watching them, and saw as she passed that a spark had communicated fire to the hay. The engine was noted for throwing sparks, and had two or three times before set loose hay on fire on the dock. "She had set fire, thrown fire around on the dock, and set loose hay on fire before in that season. She threw live cinders a quarter or a half an inch in diameter." The witness who so testified was one of the plaintiffs in the action. He had called the attention of the train dispatcher of the railroad to the dangerous condition of the engine, and the train dispatcher had said that he would see the engine fixed. Plaintiffs always had trouble with it, and were afraid of it because of its throwing sparks. The train dispatcher kept putting off the repairs. Nevertheless, plaintiffs continued to employ from day to day this dangerous implement until such a calamity as they feared actually occurred. These facts, Judge Cooley said, speaking for the court, instead of showing a cause of action, effectually disprove one. "It was a case of private employment whereby the proprietors of the engine were solicited to send it upon the private business of the employers into a place where the latter well knew, and had for a long time known and understood, it was likely to do mischief. . . . . There is just the same and no more reason for plaintiffs to complain of it than there would have been had they hired the owner of a vicious animal, known by them to be such, to bring him for their purposes upon their premises, and then been injured by him as they should have anticipated they might be. That which one consents to and invites, he cannot complain of in the law as an injury." But in its facts the case at bar is broadly distinguishable from the one relied upon. The ice company did not invite this particular engine upon their premises. They requested the railroad company to send an engine, and it sent, from several which it was in the habit of using, this particular one. The ice company had not direct knowledge that the locomotive was dangerous. The extent of their information appears to be that they had heard it had set fires before; and finally they did, as apparently the plaintiffs in the Michigan case did not, take counter precautions against the risk of fire, by employing a man to watch and guard against

this very danger. Therefore, if it be admitted that the evidence established that the ice company invited upon its premises for its own private ends a locomotive engine of the defendant known to be dangerous (a proposition which we are far from conceding the evidence does establish), nevertheless it appears that the ice company took certain counter precautions against the danger, and whether those precautions were such as reasonable care would dictate was a question properly submitted to the jury. We say properly submitted, for it does not follow, as appellant contends, that because the facts as to the nature of the precautions employed by the ice company to guard against the danger were proved without conflict or dispute, and because the precautions did not prevent the fire, that for these reasons the question of contributory negligence upon the part of the ice company became one of law to be decided by the court, and not one of fact to be submitted to the jury. If it is even fairly debatable whether or not the ice company acted with ordinary prudence in the light of its knowledge, the question is one for the jury, and the fact that such precautions as it took did not avail to prevent a conflagration is in no way determinative of the question, for, if it may be said that it can be determined by the result whether or not the person in any given case has exercised the degree of care with which the law charges him, it must logically follow that in every case in which a plaintiff has sustained injury he has been guilty of contributory negligence. It is always easy after an accident to see how it could have been avoided, but a man's duty before the calamity is not measured by such *ex post facto* information. (*Burke v. Witherbee*, 98 N. Y. 562.) There are some acts which, if a plaintiff commits, and there are some omissions of which if he be guilty, that are of such nature as clearly to fix upon him culpability and contributory negligence, if injury to him thereby result. But there is a vastly larger number of cases which come, not within this category, but are of the class where the question whether or not the acts of the plaintiff come up to or fall short of the degree of care required of him by law, is one of fact to be determined by the jury. Clearly, this is such a case, and it seems necessary in support of the conclusion only to refer to

such cases as *Fernandes v. Sacramento etc. Ry. Co.,* 52 Cal. 45; *Garr v. Eel River R. R. Co.,* 8 Cal. 366; *Van Praag v. Gale,* 107 Cal. 438; *Redington v. Postal Tel. Co.,* 107 Cal. 317; 48 Am. St. Rep. 132; *McKune v. Santa Clara etc. Co.,* 110 Cal. 480.

Appellant complains of instruction 2 given by the court at the request of the respondent. The instruction is too long for quotation. In hypothetical form it groups certain facts, and tells the jury that, if they believe these facts to be established by the evidence, a *prima facie* case is made out which would warrant a finding that the engine of defendant caused the fire. It is said that the instruction violates the constitutional provision, and that the court trespassed upon the domain of the jury in advising them upon the facts, and that the whole instruction is argumentative and unfair. A careful reading of it satisfies us that the criticism is not well founded. The evidence as to the cause and origin of the fire was circumstantial. As a part of the instruction the court said: "If upon the whole evidence, and taking into consideration all the conditions and circumstances surrounding the fire, you find it to be more probable that the fire was caused by sparks escaping from the swing engine than from any other cause, your finding upon that point, to wit, the origin of the fire, should be accordingly." This portion of the instruction is especially criticised as a declaration to the jury that they might reach a determination upon an important fact from mere conjecture, guess, or supposition, without any evidence in support of it; that they were told that they could reach a verdict upon the doctrine of probabilities, and it is said that a case is not proven by a preponderance of evidence when a mere probability is established. We think, under the facts and circumstances of this case, that this criticism is also without merit. The question of the origin of the fire was one to be determined by circumstantial evidence. No one saw a spark from the engine alight upon and set fire to the roof of the icehouse. It was, then, under the peculiar circumstances of this case, a proposition for the plaintiff to establish that the probability was that the engine occasioned the fire. Nor does the use of the word "probability" in the instruction of the court cast the question into the domain of mere conjecture and surmise. In civil cases which are decided in favor of the litigant upon a mere prepon-

derance of evidence, the rule of decision is, after all, but a rule of probability, and this is well recognized. Says Greenleaf: "In civil cases . . . . it is not necessary that the minds of the jurors be freed from all doubt; it is their duty to decide in favor of the party on whose side the weight of evidence preponderates, and according to the reasonable probability of truth." And again: "A presumption of fact is an inference which a reasonable man would draw from certain facts which have been proved to him. Its basis is in logic; its source is probability." "Circumstantial evidence is of two kinds, namely, certain . . . . and uncertain, or that from which the conclusion does not necessarily follow, but is probable only, and is obtained by process of reasoning." (1 Greenleaf on Evidence, 15th ed., 23, 24, 72.) Says this court, in *Butcher v. Vaca Valley etc. Ry. Co.,* 67 Cal. 518: "Evidence that sparks and burning coals were frequently dropped by engines passing upon the same road upon previous occasions has been held to be relevant and competent to show negligence and to make it probable that the plaintiff's injury proceeded from the same quarter." And further reference may be had to *Sheldon v. Hudson River Ry. Co.,* 14 N. Y. 218; 67 Am. Dec. 155; *Kelsey v. Chicago etc. R. Co.,* 1 S. Dak. 80; *Yankton Fire Ins. Co. v. Fremont etc. R. Co.,* 7 S. Dak. 428; *Longabaugh v. Virginia City & T. R. Co.,* 9 Nev. 271.

It has already been said that the court did not err in submitting to the jury the question of the contributory negligence of the plaintiff in the matter of the use of the particular engine. It submitted to the jury the proposition as to whether or not the precautions made use of by the ice company to prevent a fire were, under all the circumstances, such precautions as would be employed by a prudent man in a like case. But appellant objects that the court instructed the jury that the ice company did employ counter precautions, and insists that the question whether or not it employed counter precautions was one of fact for the jury. We think this criticism captious. Whether or not the counter precautions were adequate to relieve the ice company from the charge of contributory negligence was properly for the jury, but it is not disputed that the ice company did something—took some measures against the danger to which its property was exposed. It employed a man to follow and watch

the engine. Over this there was no dispute. It could not have injured the defendant that the court designated these acts of the ice company "counter precautions," when it carefully left the determination of their reasonable sufficiency with the jury.

The proof of loss was properly admitted in evidence as establishing plaintiff's liability for the moneys which it had paid to the ice company, and as a declaration within the issues of the pleadings against the defendant ice company. Plaintiff's counsel stated upon its introduction that no claim was made that any statement contained in it was binding upon the appellant. It was admitted for a limited purpose. (*Smith v. Whittier*, 95 Cal. 279.) The stipulation by agreement of the parties expressed upon the face of the writing itself was made admissible in evidence, and the declaration contained in the stipulation that the appellant had offered to pay the ice company the sum of twelve thousand five hundred dollars in addition to the insurance money was not injurious to the appellant, as the court instructed the jury at the request of appellant that "said offer was of itself neither an admission that the defendant had been guilty of negligence, nor that it had caused said fire, nor that anything was due to said Sierra Lakes Ice Company, or the plaintiff herein, by reason of said fire."

The judgment and order appealed from are affirmed.

Temple, J., Harrison, J., and Van Dyke, J., concurred.

McFARLAND, J., dissenting.—I dissent for several reasons; but, waiving other points, it is sufficient to say here that in my opinion the court below in giving instruction No. 2, asked by respondent, committed a material and prejudicial error for which the judgment should be reversed. The instruction is very long, and is, I think, erroneous as a whole, because it deals mainly with questions of fact and is argumentative. The specific part of it which, in my opinion, is clearly erroneous is as follows: "Proof to the effect that immediately before the breaking out of the fire, an engine-of the defendant, burning coal for the purpose of generating steam, was in operation immediately by, and in close proximity to, the place where the fire broke out, and that such engine had, on previous occasions, set fire by sparks escaping therefrom, and that said engine was so operated in re-

lation to said property that a spark or sparks escaping therefrom could have set the fire, and the condition of the property and the surrounding circumstances being such as to warrant a belief on your part that the fire was more likely brought about by a spark or sparks from said engine than from any other cause, would be such reasonable evidence, and would *prima facie* establish that the fire had been caused by said engine, and would warrant a finding upon your part to that effect in the absence of evidence that the fire arose from some other cause." This language does not include a single proposition of law. It simply tells the jury how they should weigh the evidence and how certain inferences of fact should be drawn from other facts, and is an unwarrantable interference with the province of the jury. Such an instruction has been repeatedly held by this court to be erroneous, and to be in contravention of section 18, article VI, of the constitution. The error of such an instruction is aptly illustrated by the case of *People v. Walden*, 51 Cal. 588. The defendant in that case was charged with having fraudulently changed certain ballots which had been voted at an election, after they had been deposited in the clerk's office; and it was shown on the trial that a key which would fit and open the lock of the door leading to the clerk's office had been found on the person of the defendant, and the court below, speaking of the key, told the jury: "If you believe it would open the clerk's office where the ballots were kept, then the possession by the defendant unexplained raises a reasonable presumption that he had it for the purpose of opening that door." The court in its opinion said: "In no view can this charge be sustained. If it be said that it was an attempt to charge in respect to a legal presumption, it was clearly error, since no such presumption would arise from the fact stated, as a matter of law. If it was an attempt on the part of the court to instruct the jury that the existence of one fact, in view of the ordinary experience of mankind, and connection of events, must be presumed from the existence of another, this was an interference with what, as we have shown, is the exclusive province of the jury. It was charging the jury 'with respect to matters of fact,' and was a contravention of section 18, article VI, of the constitution of the state." In *Estate of Carpenter*, 94 Cal. 406, the court—we quote from the syllabus,

which correctly states what was decided—said: "Instructions as to the weight and value of evidence, stating what the jury are at liberty to conclude from certain facts, if found, involving a conclusion, not of law, but of the judging mind from the evidence, are in violation of the constitutional inhibition as to instructions upon matters of fact. The court has no right to dictate or even suggest the process of reasoning by which the evidence shall be judged." (See, also, *Stone v. Geyser etc. Co.*, 52 Cal. 315; *People v. Carrillo*, 54 Cal. 63.)

For these reasons, and in accordance with the principle declared in the above cited authorities, the judgment, in my opinion, should be reversed and a new trial granted.

Rehearing denied.