[L. A. No. 1437.  Department One.—January 15, 1906.]

## LEONARD BILTON, Respondent, v. SOUTHERN PACIFIC COMPANY, Appellant.

ACTION FOR DEATH—NEGLIGENCE—COLLISION AT RAILROAD CROSSING— SUPPORT OF VERDICT — REVIEW UPON APPEAL — CONFLICTING EVIDENCE.—Upon appeal from a judgment rendered for plaintiff in

an action by a father to recover damages for the death of his minor son, alleged to have been caused by the negligence of the defendant in a collision at a railroad crossing, where there was a conflict in the evidence, in view of the verdict and the order of the court denying a new trial, the truth of the evidence most favorable to plaintiff must be assumed in determining whether the evidence was sufficient to support a finding that defendant was guilty of negligence.

ID.—DANGEROUS CROSSING — DUTY OF RAILROAD COMPANY — DANGEROUS SPEED.—Where the crossing was an exceedingly dangerous one by reason of a curve in the track and an obstructed view by an embankment, it was the duty of the railroad company to take reasonable care to prevent injury to those passing over the crossing; and where, if coming at a high rate of speed, it could not be seen by one passing over the track in time to escape from a place of danger to safety, it was its duty to moderate the speed accordingly, or in some manner make the approach of the train reasonably apparent to the user of the street.

ID.—QUESTION FOR JURY.—Where the speed of the train was thirty-five miles per hour, and the question whether or not such rate of speed at the particular crossing was so dangerous or excessive as to constitute negligence, depended upon the particular circumstances existing, and if they were such that reasonable and impartial men may well differ as to whether the speed maintained at the particular place showed a want of reasonable care, the question of negligence in maintaining such speed is one for the jury.

ID.—ABSENCE OF WARNING—NEGLIGENT SPEED.—Assuming in view of conflicting evidence that no warning was given of the approach of the train before it came into sight around an embankment, except such warning as was caused by the mere operation of the train over the track, the jury were amply warranted in concluding that the situation at the crossing was such as to render the maintenance of a rate of speed of thirty-five miles negligence on the part of the company.

ID.—PERIL WITHOUT FAULT—DEGREE OF CARE REQUIRED.—One who, without negligence on his part, has been placed in a position of great peril and bewilderment by the sudden appearance of a train is not required to exercise all the presence of mind and carefulness which are required of a careful and prudent man under ordinary circumstances, but was only required to do what was reasonable under the existing circumstances.

ID.—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.—Where the circumstances were such that it cannot be said as matter of law that the deceased was guilty of contributory negligence, and there was evidence tending to prove that the deceased stopped and listened before entering upon the track, the question of reasonableness of the effort to escape after discovery of the danger was a question for the jury, to be determined in view of all the circumstances shown by the evidence.

APPEAL from a judgment of the Superior Court of San Luis Obispo County and from an order denying a new trial. E. P. Unangst, Judge.

The facts are stated in the opinion of the court.

W. H. Spencer, for Appellant.

William J. Herrin, and R. V. Bouldin, for Respondent.

ANGELLOTTI, J.—This action was brought by plaintiff to recover damages resulting from the death of his minor son, alleged to have been caused by the negligence of defendant. The case was tried by a jury, which rendered a verdict in favor of plaintiff for three thousand dollars, upon which judgment was entered. Defendant appeals from such judgment and from an order denying its motion for a new trial.

It is earnestly contended that the evidence was insufficient to sustain the verdict, for the reasons,—1. That it failed to show any negligence on the part of defendant; and 2. That it showed that the deceased was guilty of contributory negligence precluding a recovery. The deceased, a boy within a few days of his seventeenth birthday, and possessed of all his faculties, was driving, in a light spring wagon filled with groceries and drawn by one horse, across defendant's railroad track, where the same crosses Twelfth Street, in the town of Paso Robles, when the wagon was struck by one of defendant's locomotives and he was instantly killed. The locomotive was attached to a south-bound passenger-train, which was coming into the town several minutes late, and there was evidence to the effect that it was running at an unusually high rate of speed for that place, some of the witnesses testifying to thirty-five miles an hour, and the evidence as to the space within which the train was brought to a stop tending to corroborate this. The Twelfth-Street crossing was about twelve hundred feet north of the railroad station. The town was, according to the census of 1900, a place of 1,224 inhabitants. There was some testimony to the effect that the whistle of the locomotive was not sounded at the customary place, some blocks north of Twelfth Street, and that the bell upon the locomotive was not rung. The evi-

dence indicated that at the time of the accident, by reason
of an embankment and a curve in the railroad track, one
approaching the crossing on Twelfth Street from the west,
as was deceased, could not obtain a view of the track to the
north of Twelfth Street until within thirty or forty feet
of the crossing, and that from that point to a point eight or
ten feet from the track one could see the track to the north
only for a distance of about one hundred and twenty feet.
Changes have since been made making the crossing less dan-
gerous, but there appears to be no serious contention that at
the time of the accident the situation was not as already
stated. Fronting on the west side of the railroad right of
way, and within two hundred feet of the south side of
Twelfth Street, was a flour-mill, the machinery of which was
in operation at the time of the accident. There was evidence
to the effect that the grade of Twelfth Street from a point
about one hundred and twenty-five feet west of the crossing
to the track is a down-grade of about eight to eight and one
half feet to the hundred. The railroad track approaches this
crossing from the north on a very slight up-grade. The
accident occurred on the westerly one of the three tracks of
the defendant crossing Twelfth Street. The deceased had
resided in Paso Robles for many years, and had been driving
this wagon (a grocery delivery wagon) for several months,
and was well acquainted with the crossing. There was evi-
dence introduced on behalf of the plaintiff to the effect that
the deceased drove his wagon down Twelfth Street toward
the track at a slow trot until he came within about eight or ten
feet thereof, when he brought his horse to a walk, momentarily
paused, looked up the track and apparently listened, and
then proceeded on a walk across the track. The evidence of
plaintiff's principal witness showed that after the train
reached a place where it could be seen from within a few
feet of the track, which must have been within one hundred
and twenty feet of the crossing, two or three short sharp blasts
of the whistle were sounded as an alarm, and this is also the
evidence of the engineer of defendant's train. If the train
was traveling at the rate of thirty-five miles an hour, as we
must assume it was in view of the verdict and the order of the
trial court denying the motion for a new trial, it took only the
merest fraction over two seconds to reach the crossing after
the giving of such blasts.

There was a sharp conflict in the evidence upon some of the
points stated above, but in view of the verdict and the order
of the trial court denying the motion for a new trial we must
here assume the truth of the evidence most favorable to plain-
tiff.  Upon these facts we have no doubt that the evidence was
sufficient to support a finding that defendant was guilty of
negligence.    The crossing at Twelfth Street was, in view of
the facts already stated, an exceedingly dangerous one.  The
curve in the track and the embankment obstructing the view
at a point one hundred and twenty feet north of such crossing
made it incumbent on defendant to exercise more care in ap-
proaching the crossing than could have been reasonably ex-
pected at a crossing where the view was unobstructed for a
long distance.    The obligation rested upon it of taking such
care to prevent injury by its trains to those passing over the
crossing as would, under the existing circumstances, be reason-
able, and if the view of its track was so obstructed that a per-
son lawfully using the street could not before passing from a
place of safety to a place of danger see an approaching train
just beyond the obstruction in time to escape it, if it moved
at a high rate of speed, it was its duty to moderate the speeed
accordingly, or make the approach of the train reasonably ap-
parent by other methods to the user of the street.    It is true
that, in the absence of any statute or ordinance on the sub-
ject, no rate of speed is negligence *per se.*  When taken in con-
nection with other circumstances, however, the situation is very
different.    We can conceive of cases where, independent of
any statute or ordinance, a speed of thirty-five miles an hour
in approaching a crossing would, under the circumstances
there existing, be so dangerous as at once to force all sensible
and impartial men to the conclusion that those operating the
train were not using reasonable care to avoid injury to others,
and thus constitute negligence *per se.*  However this may be,
there can be no doubt that the question as to whether or not
a rate of speed at a crossing is so dangerous or excessive as
to constitute negligence must depend upon the particular cir-
cumstances there existing, and if the circumstances are such
that reasonable and impartial men may well differ as to
whether the speed maintained at the particular place showed
a want of reasonable care, the question as to whether the rail-
road company was guilty of negligence in maintaining such

speed is one for the jury. (See Elliott on Railroads, secs. 1160, 1161: *Cooper v. Los Angeles etc. Co.*, 137 Cal. 229, 232, [70 Pac. 11].)

Assuming that no warning was given of the approach of the train before it came into sight around the embankment, except such warning as was caused by the mere operation of the train over the track, and this, as already stated, must be here assumed in view of the evidence and the verdict, the jury were amply warranted in concluding that the situation at this crossing was such as to render the maintenance of this rate of speed negligence on the part of the company. Not more than the merest fraction over two seconds would elapse between the coming into sight of the train and the moment when it would reach the crossing, an interval so slight as to give one encumbered with a horse and vehicle very little opportunity to cross in safety or withdraw, if, after stopping and listening, he had commenced to move forward and was already practically in a place of danger. In our opinion, the evidence was not such that it can be held as a matter of law that the deceased was guilty of contributory negligence.

Defendant relies upon the rule to the effect that where a person about to cross a railroad track fails to take such precautions as the courts declare are as a matter of law essential to the exercise of ordinary care on the part of one so situated, the courts will hold as a matter of law that such person has been guilty of negligence. Those precautions, as stated by this court in *Herbert v. Southern Pacific Co.*, 121 Cal. 227, 230, [53 Pac. 651], are as follows, viz.: "The railroad track of a steam railway must itself be regarded as a sign of danger, and one intending to cross must avail himself of every opportunity to look and listen for approaching trains. What he must do in such a case will depend upon circumstances. If the view of the track is obstructed, he should take greater pains to listen. If, taking those precautions, he would have seen or heard the approaching train, the very fact of injury will raise a presumption that he did not take the required precautions." The rule here laid down must be considered the settled rule of this state (see *Green v. Los Angeles etc. Co.*, 143 Cal. 31, [76 Pac. 719, 101 Am. St. Rep. 68]), and, if the evidence compelled the conclusion that the deceased failed to observe its

requirements, there could be no escape from the conclusion that he was guilty of contributory negligence as a matter of law.

There was, however, evidence tending to prove that deceased took every precaution required by this rule. If he had not done this, but had continued on a trot across the track without stopping, although he would have been guilty of negligence, he probably would have escaped injury. As because of the obstruction to the view he could not see up the track any considerable distance, it was doubtless his duty on approaching the crossing to reduce the speed of his horse and take greater pains to listen, and perhaps to stop, so that his hearing might not also be obstructed by any noises under his own control. (*Pepper* v. *Southern Pacific Co.*, 105 Cal. 389, 399, [38 Pac. 974] ; *Fleming* v. *Western Pacific R. R. Co.*, 49 Cal. 253; *Blackburn* v. *Southern Pacific Co.*, 34 Or. 215, 221, [55 Pac. 225].) There was evidence tending to show that he did all this at as late an opportunity as was given him—viz., within eight or ten feet of the track. According to that evidence, he there brought his horse to a walk, and then momentarily paused, facing partially in the direction from which the train was coming. The evidence warranted the conclusion that he could not then see the train. Unless we can say as a matter of law that the noise of the approaching train must necessarily have been apparent to him, if while pausing he had listened for it, we cannot assume that he was not listening. Apparently he was taking every precaution to observe whether or not a train was approaching. There was no evidence as to whether there was any wind. The train, it must be assumed, was behind a high embankment, which might have obstructed the sound of its movement on the rails, and did not indicate its approach by the ringing of bell or sounding of whistle. The machinery of a flour-mill was in operation within a few hundred feet. Under all these circumstances we do not feel warranted in saying that the mere operation of the train over the rails must have been apparent to one listening from a point eight or ten feet west of the crossing. It was not essential to the exercise of ordinary care on the part of deceased that he should stop and listen for any particular length of time. If he looked and listened attentively, and could not see or hear the train, and proceeded to

leave his place of safety and enter upon a place of danger only after so doing, it cannot be held that he was guilty of negligence as a matter of law in starting forward to cross the track.

Having once started, although not at once upon the track, he was already in a place of danger. It must be borne in mind that we are not considering the case of a pedestrian who is not in any danger until he has stepped within the reach of the train, and who up to the very moment of so doing has a sure and certain mode of escape clearly open to him, but the case of one on a loaded grocery-wagon, driving a horse attached thereto, who has commenced to move down a grade toward a railroad track, and is already within a very few feet thereof. Probably the locomotive flashed into view of the deceased and gave its sharp alarm blasts before his horse was actually on the track, but it does not follow that he was guilty of negligence in attempting to escape the threatened danger by crossing in front of the train. The evidence warranted the conclusion that at this time the deceased was without any negligence on his part already in a position of great peril, and that immediate action on his part was necessary to avoid injury. Bewildered as he must have been by the sudden appearance of the train and the threatened peril, he was not required to exercise all that presence of mind and carefulness which are required of a careful and prudent man under ordinary circumstances. (*Harrington* v. *Los Angeles Ry. Co.,* 140 Cal. 514, 521, [74 Pac. 15, 98 Am. St. Rep. 85].) He was only required to do what was reasonable under the existing circumstances. It is possible that he might still have been able to stop, back, and turn his horse and wagon as to entirely escape injury, although the evidence is not such as to make this clearly appear. The case was undoubtedly one where the reasonableness of the effort to escape injury after discovery of the danger was a question for the jury, to be determined by them in view of all the circumstances shown by the evidence. (See *Harrington* v. *Los Angeles Ry. Co.,* 140 Cal. 514, [74 Pac. 15, 98 Am. St. Rep. 85] ; *Liverpool etc. Ins. Co.* v. *Southern Pacific Co.,* 125 Cal. 434, 439, [58 Pac. 55].) The evidence is such as to preclude us from disturbing their finding thereon.

In the matter of instructions to the jury there was no preju-

dicial error. The first instruction complained of, wherein the court stated the nature of the action, cannot reasonably be construed as assuming any wrongful act or negligence on the part of defendant. It may be conceded that the second instruction complained of stated a proposition of law that was "purely abstract as far as this case is concerned," but it was of such a nature that it could not have operated to the prejudice of defendant. The requested instruction as to the duty of one approaching a railroad crossing, taken from the opinion in *Herbert* v. *Southern Pacific Co.,* 121 Cal 227, [53 Pac. 651], was fully covered by other instructions given.

The judgment and order denying the motion for a new trial are affirmed.

Shaw, J., and Henshaw, J., concurred.

Hearing in Bank denied.