[Civ. No. 8800. Second Appellate District, Division One.—May 14, 1935.]

CHARLES E. CASH, Appellant, v. LOS ANGELES RAIL-WAY CORPORATION (a Corporation) et al., Respondents.

W. H. Douglass for Appellant.

Gibson, Dunn & Crutcher, Norman S. Sterry and Penn Cummings for Respondents.

EDMONDS, J., *pro tem.*—Plaintiff sued for personal injuries sustained in a collision between an automobile which he was driving and a street car operated by the defendants. The trial court granted the defendants' motion for a nonsuit, and plaintiff has appealed from the judgment.

The accident occurred late in the evening at a grade crossing in the outskirts of Los Angeles. Plaintiff testified that the visibility was good and there was no fog. The tracks of the defendant railroad company are laid on a private right of way along Broadway, a public street running north and south, and open for travel on each side of and parallel with the railroad tracks. The record shows that at the time of the accident the track construction was that of the ordinary steam railroad in open country.

According to the testimony given by plaintiff, and in which he was fully supported and corroborated by independent witnesses, plaintiff was driving an automobile at about 10 o'clock at night on a street which crossed the double tracks of the defendant corporation. When within 59 feet of such tracks he brought his automobile to a complete stop. Thereafter, traveling at a rate not greater than five or six miles per hour,

he drove his automobile toward the railroad crossing, which was about one foot above the street level. After thus traveling a distance of 29 feet, and when still at a distance of 30 feet from the first rail of the street railroad tracks, he for the first time became aware of the existence of these tracks. He had never been at this crossing before. He continued to drive his automobile toward the crossing at a rate of speed not greater than five or six miles per hour. Just before his automobile reached the first set of tracks of the railroad, plaintiff again brought his automobile to a complete stop, at which time and place he listened but could hear nothing that indicated to his mind the approach of a street car. He "looked south first on that track and then north" (the latter being the direction from which the street car that struck plaintiff was approaching). He heard no bell or warning of any kind prior to the time of the accident. From the place where plaintiff stopped his automobile the second time, to wit, just before reaching the first rail of the first set of tracks, plaintiff could see, and did see, up the north track for a distance of "400 or 500 feet". He saw no street car approaching. He then "put . . . (his) car in second and proceeded to cross the track, . . . just as slow as I could; . . . I should judge four or five miles per hour". After thus stopping his automobile for the second time, and after again starting it toward the crossing, while still traveling at a rate of four or five miles per hour, and at a point "about in the center of the two (sets of railroad) tracks", plaintiff again looked; he also listened. At that time and place he neither saw nor heard the approach of the street car. He "kept right on going". It was "not until after . . . (he) got to the east rail of the west track" that plaintiff again looked north; and then it was that plaintiff saw the street car approaching him at a distance from him of 100 to 150 feet. He "stepped on the gas and tried to get off the track"; but his automobile was struck—"just the tip of the right back fender".

█ The plaintiff in crossing the railroad tracks where the accident occurred was required to use the same care and caution as is required of a person crossing the tracks of a steam railway. (*New York L. Oil Co.* v. *United Railroads*, 191 Cal. 96 [215 Pac. 72].) █ While it is the rule that a traveler about to cross such tracks must look for approaching trains at a point where such looking would be effective,

the most that can be required of one coming upon a crossing with which he is entirely unfamiliar is that he must take every reasonable opportunity to look and listen. What he must do depends upon the circumstances of each case. (*Griffin* v. *San Pedro, L. A. & S. L. R. R. Co.*, 170 Cal. 772, 775 [151 Pac. 282, L. R. A. 1916A, 842]; *Herbert* v. *Southern Pac. Co.*, 121 Cal. 227 [53 Pac. 651].)

Whether or not plaintiff used ordinary care in selecting the place to look was a question of fact for the jury to determine. According to his testimony, he first became aware of the presence of the railroad tracks when he was 30 feet from them and he stopped his machine in a place of safety before entering upon the tracks, and looked and listened for approaching cars. When between the two tracks he again looked but saw no street car and it was not until he was on the westerly track that he looked for the third time, and then saw a street car which, as far as he was aware, had neither rung a bell nor given any other warning of its approach, but which at that time was within 100 or 150 feet of the crossing.

Plaintiff's explanation of his failure to see the approaching street car is that it was hidden by trolley poles 15 inches in diameter and erected between the two tracks 62½ feet apart. His contention is that these poles, from the point where he started to cross the two tracks, appeared in an unbroken line which concealed the street car. The evidence shows without contradiction that the tracks were on a curve north of the place of the accident. A passenger on the front of the street car testified that he saw the automobile "coming across toward the white fence" in the middle of the street. Apparrently from this testimony the trolley poles offered no obstruction to vision of an object to the east of, or, possibly, exactly at the middle of the east roadway of Broadway, the point where plaintiff first knew that there were railroad tracks ahead of him. At just what point west of the center of Broadway the poles interfered with the view of the street car the record does not show. To sustain the judgment, therefore, we must say that because the plaintiff at an unfamiliar crossing did not look to the north for cars exactly at the point where he first became aware of the tracks, which point may have been the only position between it and the tracks where he could have seen the car, he was guilty of contributory negligence as a matter of law.

■ It should be remembered that on the consideration of a motion for nonsuit the evidence adduced by the plaintiff must be viewed in its most favorable light to the cause of the plaintiff. The fact that some witness in behalf of plaintiff, or even plaintiff himself, in giving his testimony, may have contradicted or discredited himself in some particular, is not determinative. Unless it clearly appear that, viewed in its most auspicious aspect, the evidence adduced by the plaintiff is of such a character that no reasonable person would credit it, it is neither material nor decisive that neither the trial judge nor an appellate tribunal would believe the testimony given by the plaintiff or any of his corroborating witnesses. The credibility of such testimony and the weight to be given thereto lies wholly with the jury for its exclusive determination.

In a very similar case it was said, ''We think the present case is not one in which it can be said that the uncontradicted evidence forces the conclusion that the plaintiff approached the track without exercising the care which an ordinarily prudent man, situated as he was, would have exercised. . . . This being so, the jury had the right to believe from the plaintiff's story, that he took advantage of every opportunity to learn of the possible approach of a train, and that, notwithstanding his precautions, he could not, and did not, know that a train was nearing the crossing until he was in a position of danger from which he was unable, by the exercise of ordinary care, to extricate himself. (*Bilton* v. *Southern Pac. Co.*, 148 Cal. 443 [83 Pac. 440].) '' (*Loftus* v. *Pacific Electric Ry. Co.*, 166 Cal. 464, 468 [137 Pac. 34, 35].)

The judgment is reversed.

Conrey, P. J., and Houser, J., concurred.