[Civ. No. 16734. First Dist., Div. Two. Aug. 2, 1956.]

SAM L. FRY, Appellant, v. JOSEPH SHEEDY et al., Respondents.

Boccardo, Blum, Lull & Niland, David S. Lull and Edward J. Niland for Appellant.

Bronson, Bronson & McKinnon for Respondents.

DOOLING, J.—Plaintiff appeals from an adverse judgment pursuant to a jury verdict in an action to recover for personal injuries.

Appellant was injured on July 1, 1952, while employed by the San Jose Steel Company as a working foreman. At the time of the accident he and his crew were engaged in removing a fence at Hunter's Point in San Francisco. This particular fence was made up of H-type steel fence posts, wire and fittings. The fittings and the wire were first removed by appellant and his helpers and it then became necessary to obtain a crane in order to remove the posts. Appellant contacted respondent Sheedy and arranged to have a crane sent to the job for this purpose.

The steel posts to be removed were about 9 feet in length. These posts were set in concrete blocks and about 3 feet of each pole was underground. Normally each post was made up of a continuous, unbroken, unwelded piece of steel. Each post weighed between 20 and 30 pounds and was separated from the other posts by a distance of about 10 feet.

In response to appellant's request a truck driven by an unidentified employee of respondent Sheedy arrived on the

job at about 1 p. m. with a 15-ton crane. Respondent Cady was the operator of the crane. Appellant instructed respondent Cady as to what was to be done.

The procedure used in removing the fence posts was as follows: Appellant and one of his crew would attach a chain suspended from the crane to the particular post to be removed. They would secure the chain by throwing a couple of half hitches around the base of the post. At this point the chain would be slack. Appellant would hold onto the chain with his hands and signal the crane operator, respondent Cady, to take up the slack in the chain. When the chain was thus made taut, necessitating a pull of three or four hundred pounds, appellant would let go of the chain and walk away from the post a distance of 12 to 15 feet. He would then signal the crane operator to pull the post out of the ground. After about two hours of work, 12 or 14 posts had been removed in this manner without mishap. All of these were solid, unwelded posts.

Appellant then attached the chain to a post which was similar in appearance to the post previously pulled. He held the end of the chain and signaled respondent to take up the slack as had been done before. After the slack was removed appellant backed away and gave the signal to exert further pressure. However the chain slipped out of position and up the post. The crane operator then stopped exerting pressure on the chain and appellant and his helper went back to the post and put the chain in position again. In response to the signal from appellant respondent Cady took up the slack in the chain a second time. Appellant then took two or three steps away from the post. The post then broke off at its base and struck appellant on the head inflicting the injuries for which he seeks recovery.

After the accident it was discovered that this particular post had been welded and had broken off at the weld. Respondent Cady recalled that someone had spoken to him about welded posts but he did not know whether this was before or after the accident.

Appellant's helper, after the accident, broke off several other welded posts by pushing them back and forth three or four times by hand. They broke at the points where they were welded and it did not take much strength to break them.

Appellant testified that respondent Cady in operating the crane responded to his signals and never picked up any tautness before receiving a signal from appellant. He further

testified that respondent Cady never moved the crane to lift a post out except in response to his signal.

Respondent Cady, called by plaintiff under Code of Civil Procedure, section 2055, testified as to the events immediately preceding the accident. He stated that appellant and his helper replaced the chain around the bottom of the post after it had slipped out of position. Then one of these men signaled him to take up the slack. He did so and determined for himself when the slack had been taken up. He was then asked:

"Q. Now, in taking up slack, Mr. Cady, would you do any more than merely take out the slack? Would you apply any pressure on the post? A. Well, there would have to be a little pressure to hold the slack, yes.

"Q. Well, would your purpose be to merely remove the slack or put on pressure? A. Just enough pressure to hold the chain tight from slipping.

"Q. I see. Just an exceedingly small amount of pressure, is that right? A. Yes.

"Q. And that is what you did on this occasion, is that right? A. Yes."

He testified that appellant started to walk away and was about six or eight feet from his initial position by the post when the post broke off and struck appellant. He further testified that between the time he finished taking out the slack and the time that appellant was struck he did not touch or operate the lever that would exert a pulling force on the post to be removed.

It is not disputed that this is a case where the doctrine of res ipsa loquitur is applicable and the jury were so instructed. It is appellant's first contention on this appeal that respondents failed, as a matter of law, to present evidence sufficient to meet the inference of negligence which arose by reason of the application of the doctrine. A defendant in a case such as this may rebut the inference of negligence upon a showing " 'either (1) of a satisfactory explanation of the accident, that is, an affirmative showing of a definite cause for the accident, in which cause no element of negligence on the part of the defendant inheres, or (2) of such care in all possible respects as necessarily to lead to the conclusion that the accident could not have happened from want of care, but must have been due to some unpreventable cause, although the exact cause is unknown. In the latter case, inasmuch as the process of reasoning is one

of exclusion, the care shown must be satisfactory in the sense that it covers all causes which due care on the part of the defendant might have prevented.' '' (*Dierman* v. *Providence Hospital*, 31 Cal.2d 290 [188 P.2d 12].) Appellant asserts that respondents have neither offered a satisfactory explanation of the accident nor established their due care in all possible respects.

Here on the evidence presented the jury could have found that a definite cause for the accident was proved and that no negligence of respondent was inherent in this cause. If so, it would not be necessary for respondents to also establish that they exercised such care in all respects that the accident could not have happened from want of care. ▮ It was shown that the post which struck appellant broke off at the point where it was welded. Respondent Cady did not know that this particular post had been welded and he testified that he followed the same procedure in preparing to remove it that he had used in removing the other posts. It was shown that it required very little effort to break off some of the remaining posts at the points where they had been welded. Considering this the jury might well have concluded that the post broke due to the weakness of the weld without any negligence of respondent Cady. ▮ The general rule is that when the defendant produces evidence to rebut the inference of negligence it is a question of fact whether the inference has been dispelled. The burden of proof is not shifted to defendants. (*Druzanich* v. *Criley*, 19 Cal.2d 439 [122 P.2d 53] ; Prosser on Torts (1941), 308.)

▮▮ Demonstration is not required of the evidence in favor of a party in a civil action. It is sufficient if the jury can reasonably find that the probabilities lie in his favor (*Liverpool etc. Ins. Co.* v. *Southern Pac. Co.*, 125 Cal. 434, 440-441 [58 P. 55] ; *Travelers Ins. Co.* v. *Industrial Acc. Com.*, 33 Cal.2d 685 [203 P.2d 747] ; *Spolter* v. *Four-Wheel Brake Serv. Co.*, 99 Cal.App.2d 690, 693 [222 P.2d 307] ) and, if the evidence will reasonably support conflicting inferences, which of such inferences shall be drawn is a question for the jury to decide (*Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421, 426 [213 P. 42, 26 A.L.R. 123] ; *Webster* v. *Board of Dental Examiners*, 17 Cal.2d 534, 539-540 [110 P.2d 992] ; *Hamilton* v. *Pacific Elec. Ry. Co.*, 12 Cal.2d 598, 602-603 [86 P.2d 829] ). While it may be true, as pointed out by appellant, that additional pressure might have been exerted on the post in other ways than by pulling the lever (which Cady testified

he did not touch) it was for the jury to say from the testimony introduced, of the comparative weakness of the welded posts, others of which were later broken at the weld by mere manual manipulation, and Cady's testimony that he did not touch the lever, whether it was more probable that the post broke at the weld because of its inherent weakness without the application of any pressure beyond that necessary to keep the chain taut.

After two days of trial appellant announced before the jury that he rested his case. The plaintiff in intervention, an insurance carrier, then introduced evidence showing that certain medical bills were paid and that they were reasonable and necessary. The intervener stated that he was adopting the liability aspects of the case as presented by appellant and then rested. A recess was taken. The court stated: "We are meeting outside the presence of the jury for the purpose of hearing certain motions. Counsel for plaintiff, and counsel for intervener having stated to the Court that they both rest." Appellant's counsel said: "That is correct." Respondents' counsel then moved for a directed verdict and stated that he rested his case. This motion was argued and denied. A recess was then taken until the following morning at 10 a. m.

The next morning, outside the presence of the jury, appellant's counsel moved to reopen appellant's case. He stated that he wished to show by expert opinion that additional force must have been applied to the chain by respondent Cady after it had been made taut to cause the post to break off and strike appellant. Respondents' counsel opposed this motion on the grounds that it was untimely, that there was no showing that this evidence could not have been introduced before appellant rested, and that it would be unfair and improper to allow such a reopening. The plaintiff in intervention joined in appellant's motion. In response to the court's questions respondents' counsel stated that he did not have available any counter expert testimony and that he had no intimation at any time that appellants might introduce expert testimony on this subject. After discussion among the court, appellant's counsel, and respondents' counsel, the court stated:

"For the record. Let the record show in respect to counsel for plaintiff's motion to reopen this case that no showing at all has been made as to why plaintiff did not introduce the asserted evidence in question as part of his case in chief.

"That no showing has been made as to why counsel rested his case without any effort to introduce such evidence.

"No showing has been made as to why, even after counsel for the defendant, acting on the plaintiff's resting of their case, himself rested his case, as to why no request was made until the next day to introduce further evidence on an issue which was plain to counsel for the plaintiff at all times, starting with the very preparation of their case.

"Let the record also show that the obvious result of reopening the case at this time will be to grant a further continuance to defendant to study such expert testimony as has been introduced, and to obtain evidence of other experts, or evidence more specifically dealing with the welding condition of the pole in question.

"This . . . morning the defendant, obviously acting upon plaintiff's resting of their case comparatively early in the afternoon session yesterday, has no witnesses present, even if they would have been otherwise available to him had plaintiff not rested the case.

"The Court simply concludes that no showing of due diligence has been made. That is clear as far as the Court is concerned." The court further said that the question was not so clear concerning prejudice to the respondents.

It is appellant's contention that the trial court committed reversible error in refusing to allow him to reopen his case to present expert testimony as to what caused the post to break. He seeks to justify his failure to introduce this testimony as part of his case in chief by stating that it constituted proper rebuttal to testimony he expected respondents to put on in defense. That is, he states that in a res ipsa loquitur case an inference of negligence arises and it is up to the defendant to come forward with an explanation if he wishes to avoid liability. It is his position that he expected respondents to do this after he rested, and that he then intended to introduce this testimony in rebuttal; that he was thus taken by surprise when respondents rested without introducing any further evidence. He further argues in justification of his position that an explanation of the cause of an accident in a res ipsa loquitur case is somewhat akin to an affirmative defense in an ordinary negligence case. He then asserts that if he had offered this evidence as part of his case in chief the trial court might have refused him permission to go into the matter further in rebuttal. (*Malone* v. *Los Angeles Ry. Corp.*, 72 Cal.App. 736 [238 P. 110].)

Thus he implies that as a practical matter he was precluded from introducing this evidence earlier. As a third justification for his action in not presenting this testimony before resting his case appellant argues that it constituted rebuttal to the testimony given by respondent Cady under Code of Civil Procedure, section 2055. He asserts that the proper time for this rebuttal is after the defense have put on their case.

 It is of course within the sound discretion of the trial court to determine whether after a case has been submitted it should be reopened to permit the introduction of further evidence. The court may properly refuse to reopen a case for this purpose when there is no showing of any excuse for not having produced it at the trial or of due diligence or where the evidence if received cannot produce a different result as where it is merely cumulative. (24 Cal.Jur., Trial, § 49, p. 768, § 50, p. 770; *Hanson* v. *Wells Van & Storage Co.,* 100 Cal.App.2d 332 [223 P.2d 509].) However, under certain circumstances a refusal to reopen to take further evidence will be considered an abuse of discretion and a reversal will be ordered.

*Sulloway* v. *Sulloway,* 160 Cal. 508 [117 P. 522], presented a factual situation somewhat similar to the instant case in that there the plaintiff rested after introducing the testimony on which he relied and the defendant introduced no evidence. The matter was continued for argument and the defendant at the argument contended that there was no evidence on certain phases of the case. The plaintiff's request to open the case to permit him to introduce testimony on these points was denied. Judgment in favor of defendant was reversed, the court stating that if the evidence sought to be introduced by plaintiff was necessary to his case the trial court should have granted his request to be allowed to reopen and introduce that evidence. The court further stated that the absolute denial of his application to be allowed to introduce evidence on these matters when he was so clearly entitled to prevail on the merits must be held to constitute prejudicial error. In the instant case, admitting that it cannot be said that appellant is clearly entitled to prevail on the merits, nevertheless it is true that respondents rely on the uncontradicted testimony of respondent Cady to sustain the judgment in their favor. Thus the testimony sought to be introduced was very material as it would have presented a conflict in the evidence on a crucial issue. On this point it has been held

that where the offered proof was material and might have compelled a decision the other way the failure to grant a motion to reopen will constitute an abuse of discretion. This is especially true where the failure to introduce such proof was due to the inadvertence of counsel. (*Christina* v. *Daneri*, 22 Cal.App.2d 190 [70 P.2d 983]; *Estate of Fama*, 112 Cal.App.2d 309 [245 P.2d 1101].)

We need not decide this question, however, which is not likely to recur on a second trial, because of other errors which we have decided require a reversal.

The following is the only instruction given by the court on the doctrine of res ipsa loquitur:

"Now, reference has been made by counsel in the course of their argument to a doctrine known as the doctrine bearing a big Latin name called *res ipsa loquitur*. Acting on the principle of that doctrine I instruct you that from the happening of the accident such as is involved in this case there arises an inference that the proximate cause of the occurrence was some negligent conduct on the part of the defendant. That inference is a form of evidence and if there is none other tending to overthrow it, or if the inference preponderates over contrary evidence it warrants a verdict for the plaintiff. Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendant to refute the inference by showing that they did in fact exercise ordinary care and diligence, or that the accident occurred without being proximately caused by any failure of duty on their part.

"In making such a showing it is not necessary for the defendants here to overcome the inference by a preponderance of the evidence. Plaintiff's burden of proving negligence by a preponderance of evidence is not changed by the rule just mentioned.

"It follows, therefore, that in order to hold the defendant liable the inference of negligence must have greater weight, more convincing force in the mind of the jury than the opposing explanation offered by the defendant. If such a preponderance in plaintiff's favor exists then it must be found that some negligent conduct on the part of the defendant was a proximate cause of the injury, but if it does not exist, if the evidence preponderates in defendants' favor, or, if in the jury's mind there is an even balance as between the weight of the inference and the weight of the contrary explanation, neither having the more convincing force, then

the verdict must be against the party having the burden of proof on the issue, and the verdict would in such case be for the defendant."

Appellant proposed the following additional instructions on the subject which the court refused to give:

1. "The instruction just given may appear to constitute an exception to the general rule that the mere happening of an accident does not support an inference of negligence. The instruction, however, is based on the special doctrine of the law which is known as the doctrine of *res ipsa loquitur*. That doctrine may be applied when the following circumstances exist:

"First: The fact that some certain instrumentality, by which injury to the plaintiff was proximately caused, was in the possession and under the exclusive control of the defendants at the time the cause of injury was set in motion, it appearing on the face of the event that the injury was caused by some act or omission incident to defendants' management.

"Second: The fact that the accident was one of such nature as does not happen in the ordinary course of things, if those who have control of the instrumentality use ordinary care.

"Third: The fact that the circumstances surrounding the causing of the accident were such that the plaintiff is not in a position to know what specific conduct was the cause, whereas the one in charge of the instrumentality may be reasonably expected to know, and be able to explain, the precise cause of the accident.

"When all these conditions are found to have existed, the inference of negligence to which they give birth will support a verdict for the plaintiff, in the absence of a showing by the defendants that offsets the inference, or in the event the proof adduced indicates contributory fault on the part of the plaintiff."

2. "If the elements heretofore described to you concerning the application of the doctrine of *res ipsa loquitur* are found by you to exist, then under such circumstances the defendants will not be held blameless except upon a showing either (1) of a satisfactory explanation of the accident, that is, an affirmative showing of a definite cause for the accident in which cause no element of negligence on the part of the defendants inheres, or (2) of such care in all possible respects as necessarily to lead to the conclusion that the accident could not

have happened from want of care, but must have been due to some unpreventable cause, although the exact cause is unknown. In the latter case, inasmuch as the process of reasoning is one of exclusion, the care shown must be satisfactory in the sense that it covers all causes which due care on the part of the defendants might have prevented.''

These two instructions correctly state the law. It is true that a party is not entitled to have an instruction worded in any particular fashion so long as the instructions fully and fairly state the applicable principles of law to be applied by the jury, but he is entitled to have the jury given instructions properly applicable to his case with sufficient completeness to enable the jury to fully comprehend the principles of law which they are directed to apply. The bare statement that there is a doctrine ''bearing a big Latin name called *res ipsa loquitur*'' from which it results that from the happening of the accident an inference of negligence arises is no substitute for the detailed explanation of the rule contained in the first rejected instruction based on B.A.J.I., 4th edition, 206-C. The doctrine is one which to an ordinary jury is apt to be puzzling and inscrutable and may not be given the weight to which it is entitled unless the reasons underlying its application are explained. Particularly is this true where the doctrine is introduced, as here, somewhat depreciatively, as ''bearing a big Latin name,'' without further explanation or elaboration. In the case of res ipsa loquitur it would be better to give the first instruction when requested by the plaintiff to orient the jury to the logical reasons underlying the rule. Standing alone the failure to give this instruction might not be reversible error. (*Welch* v. *Sears, Roebuck & Co.*, 96 Cal.App.2d 553 [215 P.2d 796].) However it did not stand alone.

The second requested instruction has the support of *Dierman* v. *Providence Hospital, supra*, 31 Cal.2d 290. It clearly states to the jury the two ways in which a res ipsa case can be overcome. A comparison of the instruction given and the instruction refused readily points up the difference in clarity. The instruction given reads: ''bearing in mind that it is incumbent upon the defendant to refute the inference by showing that they did in fact exercise ordinary care and diligence, or that the accident occurred without being proximately caused by any failure of duty on their part.'' The requested instruction explained the manner in which such proof must be made, which is entirely lacking in the instruction given,

i.e. by ''a showing either (1) of a satisfactory explanation of the accident, that is, an *affirmative showing* of a *definite cause* for the accident in which cause *no element of negligence* on the part of the defendants inheres, or (2) of such *care in all possible respects* as *necessarily* to lead to the conclusion that the accident *could not have happened from want of care*. . . . In the latter case . . . the care shown must be satisfactory in the sense that it *covers all causes* which *due care* on the part of the defendants *might have prevented*.''

■■■ The instruction given, while technically correct, is incomplete since it does not give the jury the necessary criteria for determining whether (1) the defendants ''did in fact exercise ordinary care and diligence'' or (2) ''that the accident occurred without being proximately caused by any failure of duty on their part.''

The jury was puzzled by the res ipsa instruction and returned into court with the request that it be reread. We cannot say that if they had been more adequately instructed on the subject they might not have reached a different conclusion.

■■■ The court instructed the jury on contributory negligence. Appellant's last contention is that the trial court committed prejudicial error in refusing the following instruction which he proposed:

''When a person's lawful employment requires that he work in a dangerous location or a place that involves unusual possibilities of injury or requires that, in the line of his duty, he take risks which ordinarily a reasonably prudent person would avoid, the necessities of such a situation, in so far as they limit the caution that he may take for his own safety, lessen the amount of caution required of him by law in the exercise of ordinary care.''

This instruction is taken from B.A.J.I. 102-B and has recently been approved in *Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225 [282 P.2d 69]. Under the facts of this case it should have been given.

In view of the court's approval of this instruction in the Austin case it is futile for respondents to argue that it does not correctly state the law. When the jury returned to court for further instructions on res ipsa they expressed no interest in the subject of contributory negligence. Respondents argue from this that contributory negligence was not a factor in the jury's verdict. This is pure speculation. After being further instructed the jury deliberated for two hours before

bringing in a verdict. It is perfectly possible that after resolving the question of negligence in plaintiff's favor they then took up the question of contributory negligence and resolved it against plaintiff.

Judgment reversed.

Nourse, P. J., and Kaufman, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied September 25, 1956.