[S. F. No. 3566. In Bank.—December 27, 1906.]

## SUSAN A. MARTIN et al., Respondents, v. SOUTHERN PACIFIC COMPANY, Appellant.

NEGLIGENCE—INJURY TO TRAVELER AT RAILROAD-CROSSING—CONTRIBU-
TORY NEGLIGENCE.—Though the contributory negligence of a traveler at a railroad-crossing in failing to take reasonable precautions to ascertain whether a train is approaching and to look carefully at the most available and convenient distance from the track from which an observation can be made, will preclude a recovery for resulting injury, notwithstanding the negligence of the railroad company in failing to give the proper warning or signal on approaching the crossing; yet contributory negligence on his part can only result from the fact that if he looked from a point of observation near the crossing, he could have seen the train approaching and have avoided it.

ID.—POWER OF OBSERVATION OF TEAMSTER—ACTION FOR DEATH—CON-
TRIBUTORY NEGLIGENCE A QUESTION OF FACT — NONSUIT — NEW TRIAL.—In an action by the wife and children of a deceased teamster for his death at a railroad-crossing from collision with an approaching train which gave no signals, where there was no field of observation until a warehouse corner was approached, and where, under all the evidence, it was a question of fact for the jury to determine, as affecting the question of contributory negligence, whether had the deceased looked down the track when he approached the warehouse corner he could have seen the train then approaching half a mile away, and whether the train could have covered that distance while he was crossing the track, the court, after having granted a nonsuit for contributory negligence of the deceased, did not err in granting a new trial to the plaintiffs.

ID.—REVIEW OF NONSUIT—ERROR OF LAW.—A ruling granting a nonsuit, if excepted to and specified as such, may be reviewed upon appeal as an error of law.

ID.—STATEMENT AND BILL OF EXCEPTIONS—NOTICE OF INTENTION—
SPECIFICATIONS.—A statement and a bill of exceptions may be incorporated in the same paper; and where both were settled as such, and the ruling granting the nonsuit and the exception to it appeared in the substantive part of the case, no other specification of error was necessary than that contained in the notice of inten-

tion to move for a new trial embodied in the bill of exceptions, giving as one ground of the motion errors of law occurring at the trial and excepted to by plaintiffs. A specification of particular errors relied upon, though required in a statement, is not required in a bill of exceptions.

APPEAL from an order of the Superior Court of Alameda County granting a new trial.  F. B. Ogden, Judge.

The facts are stated in the opinion of the court.

A. A. Moore, for Appellant.

W. W. Foote, and Vogelsang & Brown, for Respondents.

LORIGAN, J.—This action was brought by plaintiffs, the wife and minor children of Joseph Martin, to recover damages for his death, claimed to have been caused by the negligence of defendant in the operation of its railroad.

This appeal is taken by the defendant from the order granting plaintiffs a new trial after a judgment of nonsuit had been entered against them upon the trial of the action in the court below.

The accident resulting in the death of Martin occurred at a crossing next to the town of Irvington, in Alameda County, on September 6, 1894. The railroad track at this point runs north and south, and is intersected by a road known as the Mission road, running east and west. The Mission road is sixty-six feet wide. The right of way of the defendant is sixty feet wide, the main line of track being located in the middle of it, the rails being a fraction over twenty-seven feet from the east-and-west lines of the right of way. On the corner formed by the intersection of the easterly line of the right of way and the northerly line of the Mission road is located what is known as Vollmer's warehouse, which extends about one hundred feet northerly along the right of way, and easterly about one hundred and fifty feet on the Mission road. Further north of Vollmer's, and also on the edge of the right of way, is located another warehouse. In front of these warehouses, and between them and the main-line track, was a switch or siding which extended some five hundred feet north of the crossing. The platforms of said warehouses, which were four and a half feet in height, extended westerly so as

to reach the floors of box-cars stationed on the switch, the platform to the north being much wider than the Vollmer platform, in order to meet the curve of the switch as it joined the main track. The distance from the corner of Vollmer's warehouse to the nearest rail of this side-track was twenty-nine feet four inches, and from the center of the near rail of said side-track to the nearest rail of the main track the distance was twelve feet eleven inches. At the time of the accident there were several freight box-cars of defendant—the evidence is uncertain as to the number—standing on said siding, one of these extending some distance into the Mission road. These box-cars were from thirty-four to forty feet long, extended two feet beyond the rails of the side-track, and stood next the platform in front of Vollmer's warehouse.

The deceased was a farmer and teamster, a man of good hearing and eyesight, who had been accustomed for several years to drive teams on the road over this crossing where he was fatally injured. On the afternoon of the day of the accident he was driving a team of heavy horses harnessed to an empty open-geared lumber-wagon, and was sitting astride on the reach near the center, at least eleven feet from the front end of the wagon-pole. The reach of the wagon stood two and one-half feet from the ground and the deceased was a man about five feet nine inches in height. He had driven from the town of Mission San Jose down-grade toward Irvington and this railroad-crossing westerly on the Mission road at a slow trot. When some two hundred and fifty feet from defendant's right of way the evidence shows that his view of defendant's track was practically obscured by trees and buildings, including the warehouses mentioned above. As deceased came down about the corner, or close to the corner, of Vollmer's warehouse on the defendant's right of way (the exact spot seems to have been indicated by a witness on some diagram used on the trial, which diagram is not in the record), he stopped his team and sat in the attitude of one listening. How long he so remained does not appear. It does appear, however, that, though he stopped to listen, he did not look or attempt to look either at this point or at any other time after he started toward the crossing, although there was evidence that through the space between the warehouse and the box-cars on the switch, something over seven feet, an observa-

tion might be had by a person standing in the Mission road along defendant's track for some two thousand feet northerly in the direction of Niles. After stopping to listen, deceased started his team into a walk towards the crossing, going very slowly up a raise in the road approaching it. As he cleared the box-car, which was extending into the Mission road on the siding, he looked down the track, discovered the train, immediately whipped up his team, which was on the main track at the time, and endeavored to clear it. The train, however, struck the hind wheel of the wagon, threw him from it, and in the fall he sustained injuries which caused his death. The train which collided with the wagon of deceased was a special freight-train, and there was evidence in the case tending to show that no bell or whistle or other signal was given of the approach of the train towards the crossing, and that it approached it on a descending grade at the rate of from thirty-five to forty miles an hour.

With this statement of the general features of the evidence, we approach the merits of the appeal, calling attention to other items of evidence as we proceed.

The only question in the case is whether, upon the evidence, the court was warranted in holding, as a matter of law, that the decedent was guilty of contributory negligence in approaching the crossing. While originally so holding, upon the motion for a nonsuit, the trial court was satisfied upon a more particular consideration of the evidence upon the motion for a new trial that the question of deceased's contributory negligence was properly for the jury, and we think this conclusion was correct.

In granting the nonsuit, as it appears from the grounds of defendant's motion therefor, the court was of the opinion that the evidence showed that while defendant, when near the crossing, listened for an approaching train, he was guilty of contributory negligence in failing to look northerly along the track when he reached the corner of Vollmer's warehouse on defendant's right of way, from which point, as we have said, there was evidence that the track could have been seen for two thousand feet. And the court must have assumed in this connection that the testimony showed that had the deceased so looked at this point he would have discovered the approaching train.

There can be no question but the law is well ·settled in this state that a traveler upon a highway approaching a crossing must take all reasonable precautions to ascertain whether a train is approaching. In this regard the imperative duty is cast upon him to listen carefully and to look carefully at the most available and convenient distance from the track from which an observation of it can be made, and when the act of listening and looking may be reasonably effective, that notwithstanding the employees operating a train may be guilty of negligence in failing to give the statutory signals or warnings of its approach to a crossing, still if at a convenient point near the track a traveler could have discovered the approach of the train by the exercise of his senses of hearing and sight, and hence avoided the danger in which he placed himself, his failure to do so will constitute contributory negligence precluding a recovery from those who arc equally negligent with himself. (*Herbert* v. *Southern Pacific Co.*, 121 Cal. 227, [53 Pac. 651] ; *Green* v. *Southern Cal. Ry. Co.*, 138 Cal. 1, [70 Pac. 926] ; *Green* v. *Los Angeles Term. Ry. Co.*, 143 Cal. 31, [101 Am. St. Rep. 68, 76 Pac. 719].)

But it will be observed that as far as the duty of the traveler upon the highway to look is concerned, contributory negligence on his part in failing to do so can only result from the fact that, if he looked from a point of observation near the crossing, he could have seen the train approaching and have avoided it. It is only when, if he had made the observation, he could have seen the coming of the train that he can be said to have been negligent in omitting to do so.

The trial court in granting the nonsuit necessarily assumed that the evidence showed that when deceased reached the corner of the warehouse the train was approaching along the two thousand feet of track open to observation from that point, and that had he looked he would have seen it; but we think, as the lower court doubtless did on the motion for a new trial, in its review of the evidence, that whether the train at the time when deceased could have looked had reached a point where he could have seen it had he done so was, under the evidence, a question for the jury.

The witness Christensen, who made the observation as to the distance one could see up the track from the warehouse corner, testified ''that a man on the siding, or on the main

track, or anywhere between or at the corner of the warehouse can see a man afoot on the track coming towards Niles for a distance of at least two thousand feet. He can see him until he gets over the little hill that runs down toward Mallard, where the grade would be higher than his head.'' The evidence of this witness simply fixed the fact that a view of the track from the warehouse corner might be had for the distance stated, but whether the train was anywhere within the field of observation of deceased had he looked from that point was a matter to which other evidence in the case was addressed. Ainsworth, one of the witnesses for the plaintiff, and proprietor of a hotel near the crossing, was watching for the coming of the train, as a guest at his hotel wished to take it if it stopped. He testified that a train would ordinarily be in view a quarter of a mile below the switch (the switch was five hundred feet long) where the track declines and runs down into Niles (doubtless the point called Mallard referred to in Christensen's testimony); that he saw deceased stop his team at the corner of the warehouse and listen; that the witness looked down the track at the same time to see if he could see a train or hear it coming, but did not see anything; that the deceased started towards the crossing, walking his horses very slowly, and that his team was in the middle of the track when deceased looked, discovered the train, and then whipped the horses up in an effort to clear it.

Another witness, Mrs. Brownell, who was in an upper story of the same hotel of which her husband with Ainsworth was proprietor, was watching for the train, as she did daily, because her little child was always anxious to see it pass. She saw the accident, and testified that she looked down the track and saw the train coming; that it was then half a mile away, and deceased was leisurely approaching the track and his team was then about ten feet from it; that this was the first she saw of him; she had not seen him stop to listen.

Under this evidence, considered with all the other evidence in the case, it was for the jury to determine, as affecting the question of contributory negligence, whether had the deceased looked down the track when he approached the corner of the warehouse he could have seen the train then approaching. If the testimony of these witnesses was uncontradicted and the jury were satisfied with the accuracy of their observations

and their capacity to determine distances, it would warrant them in finding that at the time deceased reached the point when he could have looked the train was not in sight. According to Ainsworth, it was not observable at Mallard, a point two thousand feet down the track from which it could be seen, and, according to the testimony of Mrs. Brownell, who was looking from an elevation, it was half a mile away. The testimony of these witnesses may be open to the criticism counsel for appellant subjects it to, but their credibility and the weight to be attached to their testimony were matters for the consideration of the jury. It is insisted by counsel that the truth of the testimony of these witnesses is mathematically impossible, as the train could not have covered the distance of two thousand feet while the deceased was proceeding twenty-seven feet from the corner to the nearest rail of the main track, or at most thirty feet to its center. But if the testimony that the train was going thirty-five or forty miles an hour was true, the train could have covered the distance of two thousand feet in less time than a minute, while it would not be unreasonable for the jury to conclude that it would take more than that time for the deceased to proceed from the warehouse corner to the point of collision. In any event, whether he could or could not was a fact to be determined by the jury.

We think, in view of the testimony referred to, that the case upon the question of the deceased's contributory negligence should have been originally allowed by the court to go to the jury, and in subsequently reaching that conclusion by granting the motion of plaintiffs for a new trial we do not think the lower court committed any error.

There is no merit in the point made by appellant that the lower court erred in granting the motion for a new trial because the motion was presented on a statement of the case and contained no specification of particulars in which the evidence was alleged to be insufficient to justify the decision of the court in granting a nonsuit, or any assignment of error.

The statement, while entitled a statement on motion for a new trial, was also a bill of exceptions, and was regularly settled and allowed as such. Both the statement and the bill of exceptions may be incorporated in the same paper. (*Spottiswood* v. *Weir*, 66 Cal. 525, [6 Pac. 381].)

The ruling granting the nonsuit and the exception of plaintiffs to it appeared in the substantive part of the case. If excepted to and specified as such, the granting of a nonsuit may be reviewed on appeal as error of law. (*Gerlach* v. *Turner,* 89 Cal. 446, [26 Pac. 870] ; *Malone* v. *Beardsley,* 92 Cal. 150, [28 Pac. 218].)

In the notice of intention to move for a new trial embodied in their bill of exceptions it was specified, among other grounds of the motion, that it would be made on account of errors in law occurring in the trial and excepted to by plaintiffs. This was all the specification of error that was necessary. Where a party proceeds upon a bill of exceptions the specification of the particular errors upon which he relies is not necessary. It was said in *Shadburne* v. *Day,* 76 Cal. 355, [18 Pac. 403], and since followed (except in the case of *Miller* v. *Wade,* 87 Cal. 410, [25 Pac. 487], subsequently overruled in *Barfield* v. *South Side Irr. Co.,* 111 Cal. 119, [43 Pac. 406]), that "No specification of the particular errors of law on which the appellant will rely is made in her bill. But while this is required in a statement of the case (Code Civ. Proc., sec. 659, subd. 3), it is not in a bill of exceptions (Code Civ. Proc., sec. 650). The point of respondent, therefore, is not tenable." (See, also, *Hagman* v. *Williams,* 88 Cal. 146, [25 Pac. 1111] ; *Barfield* v. *South Side Irr. Co.,* 111 Cal. 119, [43 Pac. 406] ; *Smith* v. *Smith,* 119 Cal. 183, [48 Pac. 730, 51 Pac. 183] ; *Harper* v. *Gordon,* 128 Cal. 489, [61 Pac. 84].)

The order appealed from granting the new trial is therefore affirmed.

Henshaw, J., Shaw, J., Angellotti, J., and Sloss, J., concurred.