[Civ. No. 1338.   Second Appellate District.—July 7, 1913.]

## J. O. EATON, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

[Civ. No. 1339.   Second Appellate District.—July 7, 1913.]

## JENNIE EATON et al., Respondents, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

[Civ. No. 1340.   Second Appellate District.—July 7, 1913.]

## NELLIE I. BARNETT et al., Respondents, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

RAILROADS—ACCIDENT AT CROSSING—SWITCH ENGINE STRIKING VEHICLE —CONTRIBUTORY NEGLIGENCE.—Where, in an action against a railroad company for injuries suffered by persons riding in a buggy when a switch engine struck it, the defense is raised that the plaintiffs were guilty of contributory negligence in not observing the approaching engine before they reached the "north track," the determination of the jury, on conflicting testimony, that the engine was on the "south track" at the time of the collision, is conclusive.

ID.—FINDING OF JURY—CONCLUSIVENESS WHERE THREE JURIES COME TO SAME CONCLUSION.—If three different juries, upon practically the same evidence, reach the same conclusion, this is a significant fact; and under such circumstances, if there is any substantial evidence tending in any material degree to support the verdict, it should not be disturbed.

ID.—LOCATION OF ENGINE—SPECIAL ISSUE.—It is not error to refuse to submit to the jury, with instructions to return a special finding thereon, the question: "Was the engine, when it struck the plaintiff's buggy, running on the defendant's north-bound track"?

ID.—SPECIAL ISSUE—DISCRETION OF COURT.—Whether or not such inter-
rogatory should have been submitted to the jury was, under section
625 of the Code of Civil Procedure, a question to be determined by
the court in its discretion, and the exercise of such discretion is not
a subject for review on appeal.

ID.—CONTRIBUTORY NEGLIGENCE IN APPROACHING TRACK—LOOKOUT FOR
APPROACHING ENGINES.—If the plaintiffs stopped twice as they ap-
proached the main tracks, the last time being distant from the south
track about one hundred and fifty feet, and looked and listened for
the purpose of learning whether a train or engine was being oper-
ated in the vicinity, and saw nothing to indicate the proximity of
the engine, and heard no bell, whistle, or other signal, though there
was evidence on behalf of defendant that the bell was continuously
rung as the engine approached the crossing, it cannot be said, as a
matter of law, that plaintiffs were guilty of negligence in not leav-
ing their vehicle and going forward on foot to a point from which
a view of the main track could be had.

ID.—OBSTRUCTION OF VIEW BY CARS—DUTY OF PERSONS APPROACHING
TRACK.—If plaintiffs' view of the main track was obstructed by box-
cars standing on yard tracks, their failure to look for approaching
trains cannot be imputed to them as negligence, but the duty de-
volved on them to take such other precautions for their safety as
reasonable prudence demanded. And it was their duty, on reaching
a point where their vision was unobstructed, to stop and look, if
there were time and space for so doing.

ID.—JUROR—FAMILIARITY WITH RAILROAD CROSSING AS GROUND FOR
BIAS.—It was not reversible error for the court to deny a challenge
to a juror on the ground of bias, because of his familiarity with the
railroad crossing, when he stated that he would reach a verdict upon
the evidence adduced and be guided by the instructions of the court
in his consideration thereof.

ID.—BIAS OF JUROR—CONCLUSIVENESS OF TRIAL COURT'S DETERMINATION
OF QUESTION.—The question as to the bias of a proposed juror is
one of mixed fact and law, and where there is a conflict of evidence
touching the question, the conclusion of the court thereon, like the
determination of any other fact found upon conflicting evidence, is

ID.—SPEED OF ENGINE—INSTRUCTIONS PROPERLY REFUSED.—If excessive
speed was not an issue and there was no evidence whether the vicinity
was open and sparsely settled, the court did not err in refusing a
request of the defendant to instruct the jury that "there is no law
of this state regulating the speed of railroad trains while running
through sparsely settled country. A speed of fifteen or even twenty
miles an hour is not of itself negligent"; nor, to refuse to give an
instruction that "no unusual speed of the engine could have misled
the plaintiff unless he saw or heard the engine and undertook to

cross ahead of it, and to make such an attempt and fail is conclusive evidence of contributory negligence."

ID.—OMISSION TO RING BELL AT CROSSING—INSTRUCTIONS.—The giving of an instruction that the omission to ring the locomotive bell, as required by section 486 of the Civil Code, constituted negligence on the part of defendant railroad company for which, in the absence of contributory negligence, it would be liable in damages, was proper.

ID.—CARE REQUIRED IN APPROACHING TRACK—INSTRUCTION COVERED BY OTHERS.—A requested instruction that "the track of a steam railroad must itself be regarded as a sign of danger, and if the traveler would have seen the engine if he had looked, the very fact of injury will raise a presumption that he did not look and was therefore guilty of contributory negligence," is fully covered by an instruction that "the railroad track of a steam railway must itself be regarded as a sign of danger, and one intending to cross must avail himself of every opportunity to look and to listen for an approaching train. What he must do in such case will depend upon circumstances. If the view of the track is obstructed he should take greater pains to listen." The refusal of the requested instruction is therefore not cause for complaint.

ID.—EVIDENCE—OPINION OF ENGINEER AS TO CARE TAKEN BY FIREMAN.—A question directed to the engineer, who before the accident had left the engine in charge of the fireman, "Is there anything that you know of that he (the fireman) could have done that he didn't do?" is improper as calling for a conclusion and invading the province of the jury.

ID.—EXHIBITION OF INJURED ARM TO JURY.—It was not prejudicial error to permit one of the plaintiffs to exhibit his injured arm to the jury, although the injury had been admitted by the answer.

APPEALS from judgments of the Superior Court of Santa Barbara County and from orders refusing a new trial. S. E. Crow, Judge.

The facts are stated in the opinion of the court.

Canfield & Starbuck, for Appellant.

Richards & Carrier, and John J. Squier, for Respondents.

SHAW. J.—In the above-entitled cases the defendant in each thereof appeals from the judgment rendered against it, and from an order made therein denying its motion for a new trial.

J. O. Eaton is the husband of Jennie Eaton, and William A. Barnett is the husband of Nellie I. Barnett.

In each case the action is one to recover damages for personal injuries sustained in a collision between a vehicle occupied by J. O. Eaton, with whom his wife and Mrs. Barnett were riding, and a switch engine operated by defendant over its tracks across Milpas Street in the city of Santa Barbara, upon which the parties injured were driving. While the cases were tried separately before different juries, in each of which on appeal a transcript is filed, the evidence adduced, save in particulars herein noted, is conceded to have been practically the same. No briefs are filed in the cases of Jennie Eaton and Nellie I. Barnett, the appeals being submitted by the parties upon the briefs filed and oral argument made in the case of J. O. Eaton as applicable to each thereof.

The railway line over which defendant operates its trains in entering Santa Barbara from the east consists of a single track to a point where it crosses Alisos Street. From Alisos Street, extending in a direction almost due west to a point west of the passenger depot, the main line consists of two tracks running parallel at a distance apart of thirteen feet measured from center to center of the tracks. The north track is used by defendant in the operation of its trains going north, and the south track is devoted to the operation of trains running south. Defendant's yard office is situated on the north side of the north track at a point about eight hundred feet east of the city passenger depot. The railway yard wherein defendant's cars when not in use are stored is reached at a point about one thousand feet east of the yard office by a track leading from the south main track, from which cars are, by means of a switch, run to and from the yard. Connected with this lead yard track are four or five other tracks branching therefrom and all of which extend easterly, parallel with each other and distant one from the other thirteen feet measured from center to center, across Milpas Street. Between the yard office and the Alisos Street switch at the intersection of the two main tracks, distant over one mile from the yard office, there was no means whereby an engine could cross from the north to the south tracks, other than a cross-over track connecting the two main tracks at a point about seven hundred feet east of the yard office.

On May 29, 1910, shortly before the hour of six o'clock P. M., J. O. Eaton, with his wife and Nellie I. Barnett, was in a buck-board buggy drawn by a single horse, driving north on Milpas Street, intending to cross the main tracks. While this street is sixty feet wide, that portion of it devoted to a driveway was less than thirty feet in width. At that time, all of the yard tracks for some distance on both sides of Milpas Street were occupied by box cars, which on the west side extended for two blocks, some of which cars projected into the street, leaving a narrow space in the nature of a lane for a driveway through the street, which extended in a northwesterly direction, crossing the two main tracks at an angle of about thirty degrees. By a city ordinance defendant was authorized to use Milpas Street for general railroad purposes. The view of the main tracks, other than at the point where Milpas Street crosses them, was obstructed by the location of these box cars. Upon reaching one of the main tracks after emerging from the lane so made by the box cars, and while on such main track, plaintiffs' vehicle was, at the street crossing, struck by a switch engine of defendant, operated by the fireman thereof, and being run backward from the yard office easterly for the purpose of taking it to the round house for a supply of fuel. This round house was situated at a point some distance north of the main tracks and was reached by a switch track leading from and connected with the north main track at a point about five hundred feet west of Alisos Street.

One of appellant's chief contentions is that at the time when the collision occurred the engine was being operated on the north track, and, assuming the evidence sufficient to establish this fact, it insists that plaintiffs were guilty of contributory negligence, for the reason that it appears that they, from a point of safety, had ample opportunity, had they with reasonable prudence availed themselves of it, to see the approaching engine before reaching the north track, and could have stopped their horse, which was gentle and driven at a slow walk not exceeding two or three miles per hour. According to our view, it is unnecessary to consider the second proposition, for the reason that the record discloses a sharp conflict in the evidence touching the question as to whether the vehicle was on the north or south track when struck by the engine. The court fully instructed the jury as to the law of contributory negli-

22 Cal. App.—30

gence applicable to the conflicting evidence in the case, telling it, among other things, that plaintiffs could not recover if they were guilty of such negligence; that "it is the duty of travelers upon a highway to use care for their own safety in approaching railroad tracks, and in particular to look carefully for approaching trains or engines before attempting to cross the track; they must not only stop and listen where they cannot see, but must also look and if necessary stop to look, where they can see"; that "one is bound to use such care under all the circumstances as a man of ordinary prudence would have exercised under like circumstances, and if you find from the evidence that the plaintiff exercised such care at the time of and preceding the injury, if there were any injuries, he was not guilty of contributory negligence"; that "the track of a steam railroad must itself be regarded as a sign of danger, and if the traveler would have seen the engine if he had looked, the very fact of injury will raise a presumption that he did not look, and was therefore guilty of contributory negligence"; and that "if the plaintiff was negligent in going from a place of safety to the place of danger upon the track in front of the engine," he could not recover, notwithstanding the defendant was negligent.

The record of the evidence pertinent to the question is voluminous and no purpose could be subserved in undertaking to repeat it here. Suffice it to say that while, according to the testimony of the fireman operating the engine, as well as that of others, offered on behalf of defendant, the engine at the time of the collision was on the north track, which testimony appellant claims is corroborated by circumstantial evidence, on the other hand, not only was there testimony equally direct and positive that it was on the south track, but the circumstances fully established surrounding the accident and connected therewith are, in our opinion, inconsistent with appellant's theory and strongly tend to show the vehicle was on the south track when struck by the engine. These circumstances, too, were of a character well calculated to raise a grave doubt in the minds of the jurors as to the truth of the statements made by the fireman, who, other than plaintiffs, was the only witness to the accident. While if it be conceded that the locomotive (which left the yard office in charge of the engineer, who shortly after starting got off and

left it to be run by the fireman, a young man twenty years
of age, the engineer going to his home) started east from a
point in front of the yard office on the north track, its destina-
tion being the round house, which it could reach only from
the north track, the jury may have been satisfied, in view of
the fact that it was near the time when a passenger train was
due from the east over the north track, it was switched from
such track to the south track at the cross-over seven hundred
feet east of the yard office, with the intention of running it
to Alisos Street, at which point a switchman was in attend-
ance, there being none in attendance at the round house
switch.   It is a significant circumstance that, under the rules,
the engine was not entitled at the time to be on the north
track, and that the collision occurred so near the time when
the incoming train was expected that the fireman, notwith-
standing the serious and mangled condition of two of the
plaintiffs, all of whom were unconscious, deemed the position
of the engine so dangerous to the incoming train that he
immediately left the plaintiffs without attendance or call for
aid, and ran his engine to Alisos Street for the purpose, so
he says, of reaching the south track, thus avoiding danger
of a collision with the incoming train, and upon which south
track he says he returned to the place of the accident.   Con-
ceding that if the engine was at the time of the collision on
the north track, plaintiffs after passing through and emerg-
ing from the lane made by the box cars located upon the yard
tracks could by the exercise of reasonable prudence and care,
as claimed by appellant and admitted by plaintiff J. O. Eaton,
have seen the approaching engine in time to have stopped
their horse before reaching said track, and thus have avoided
the collision, it is apparent from the verdict rendered under
the instructions given that the jury upon a consideration of
this conflicting evidence determined the engine was on the
south track when it struck the vehicle in which plaintiffs were
driving, and such determination must be deemed conclusive.
Moreover, it is a significant fact that three different juries
upon practically the same evidence reached the same con-
clusion.   Under such circumstances, if there be any substan-
tial evidence tending in any material degree to support the
verdict, it should not be disturbed. (*Brown* v. *Paterson
Parchment Paper Co.*, 69 N. J. L. 474, [55 Atl. 87] ; *Clark* v.

*Barney D. Co.,* 109 Fed. 235; *Talcot* v. *Commercial Ins. Co.,* 2 Johns. (N. Y.) 467.)

Error is predicated upon the fact that the court in each case, as requested by defendant, refused to submit to the jury, with instructions to return a special finding thereon, the question: "Was the engine when it struck the plaintiff's buggy running on the defendant's north-bound track?" Appellant's contention is based upon section 625 of the Code of Civil Procedure, which provides that "the court may direct the jury to find a special verdict in writing, upon all, or any of the issues, and in all cases may instruct them, if they render a general verdict, to find upon particular questions of fact, to be stated in writing, and may direct a written finding thereon." Under the provisions of the section which, since the amendment made thereto in 1909, is in form identical with the statute as enacted in 1872, the court was not required, as it was prior to such amendment of 1909 (*Plyer* v. *Pacific etc. Cement Co.,* 152 Cal. 125, [92 Pac. 56]), to submit particular questions of fact to the jury. "It is the court's province to determine as to what particular facts the jury shall find specially, and neither party has the right to dictate the terms of any particular question to the jury, and for refusing to comply with such a request no error can be properly assigned." (*American Co.* v. *Bradford,* 27 Cal. 365.) And in *Cleghorn* v. *Cleghorn,* 66 Cal. 309, [5 Pac. 516], it is said: "It was optional with the judge to submit special issues to the jury or not, and his refusal to submit them cannot be reviewed here." To the same effect is *Smith* v. *Occidental etc. Steamship Co.,* 99 Cal. 472, [34 Pac. 84]; *Schultz* v. *McLean,* 109 Cal. 444, [42 Pac. 557]. Whether or not the interrogatory should have been submitted to the jury was a question to be determined by the court in its discretion, and the exercise of such discretion is not a subject for review on appeal.

Appellant insists that the court erred in denying its motion made in each case for a nonsuit, and in refusing, at defendant's request, to direct the jury to render a verdict for defendant. This contention is based upon the fact that, while the evidence offered on behalf of plaintiffs, without conflict, showed that before reaching the main tracks it was impossible for them to see them, other than the portion thereof crossing

Milpas Street, they could, nevertheless, by getting out of the buggy and going forward, have obtained a full view of the tracks and have seen the approaching engine, and their failure to do so under the circumstances was contributory negligence. It was a quiet day, the horse was proceeding slowly and the buggy, a new one, made little or no noise. Mrs. Eaton in particular was nervous and warned her husband to exercise great caution in avoiding trains. The approaching engine was coasting backward, and hence running noiselessly at not exceeding ten miles per hour, without exhaust of steam or emission of smoke. Plaintiffs stopped twice as they approached the main tracks, the last time being distant from the south track about one hundred and fifty feet, and looked and listened for the purpose of learning whether a train or engine was being operated in the vicinity; they saw nothing to indicate the proximity of the engine, and heard no bell, whistle, or other signal, though there was evidence on behalf of defendant that the bell was continuously rung as the engine approached the crossing. It cannot be said, as a matter of law, that plaintiffs, under the circumstances shown, were guilty of negligence in not leaving their vehicle and going forward on foot to a point from which a view of the main track could be had. (*Strong* v. *Sacramento etc. R. R. Co.*, 61 Cal. 326; *Vance* v. *Atchison etc. Ry. Co.*, 9 Cal. App. 20, [98 Pac. 41]; *Kelly* v. *St. Paul, M. & M. Ry. Co.*, 29 Minn. 1, [11 N. W. 67]; *Davis* v. *New York C. & H. R. R. R. Co.*, 47 N. Y. 400; *Hinkle* v. *Richmond & D. R. Co.*, 109 N. C. 472, [26 Am. St. Rep. 581, 13 S. E. 884].) Since "negligence is a question of fact for the jury, and the law has fixed no exact standard of care other than the general one that it must be such as a reasonably prudent man would exercise in the particular circumstances" (*Scott* v. *San Bernardino Valley etc. Ry. Co.*, 152 Cal. 604, [93 Pac. 677]), the question was one of fact for the jury, upon all of the evidence, to determine.

In line with this contention, appellant attacks instructions given in the J. O. Eaton and Barnett cases to the effect that, "If the jury believe from the evidence that the defendant at the crossing where the accident is alleged to have occurred have suffered to remain on their tracks lines of box-cars so as to exclude to a traveler a view of its track when about to

go upon such track, the traveler is excused from looking and the failure to look cannot be imputed to him as negligence, but it throws upon him additional care in listening and to take such other precautions for his safety as may be reasonably necessary.'' We are unable to perceive any ground for objection to these instructions in stating that plaintiffs were not negligent in looking at the defendant's main tracks from a point where it is conceded that, by reason of the obstruction to a view thereof caused by the location of defendant's box-cars upon the yard tracks, it was impossible to see. Under such circumstances, no purpose could be subserved by looking, but, as stated, the duty devolved upon the plaintiffs to take such other precautions for their safety as reasonable prudence demanded. It left to the determination of the jury the question as to what precautionary measures plaintiffs should have taken to avoid the collision, and whether, under all the circumstances, they should, since their view of the track was obstructed, have left their buggy and gone forward on foot upon a reconnoitering expedition. Moreover, by other instructions given in these cases the jury were fully and clearly instructed that it was the duty of plaintiffs, upon emerging from between the box-cars to a point where their vision of the track and approaching engine was not obstructed, to stop and look in order to ascertain the condition, provided there was time and space to do so, and that not to do so under such circumstances was negligence; that ''stopping and listening where such stopping and listening was of no benefit to the plaintiff is no excuse for not looking when he came out from between the box-cars where such looking would have been effective.'' ''It was not enough that the plaintiff was careful at first. He was bound to continue to be careful until he was out of danger.'' Had the engine been on the north track, the evidence tended to show there was sufficient time and space for plaintiffs to have seen it approaching and to have stopped before reaching said track, but if it was on the south track the evidence tended to show plaintiffs, after reaching a point where it could be seen, had not sufficient time and space within which to stop and avoid the collision, which, according to plaintiffs' testimony, occurred the instant they emerged from between the box-cars, at which point they were first appraised of its presence when too late to escape.

It is likewise insisted that the court erred in the trial of
the Jennie Eaton case by refusing, at defendant's request, to
instruct the jury as follows: ''The plaintiffs were bound to re-
serve time and space enough to enable them to control their
horse and stop under the circumstances known to them, and
if it was necessary to stop on coming out from between the
box-cars in order to find out the circumstances and save the
necessary time and space, then they were bound to stop and
look at that point,'' to which instruction the court added the
words, ''if they had time and space in which to stop for such
purposes before reaching the place where the injury, if any,
occurred,'' and as thus modified gave it.   What has been here-
tofore said is applicable to the objection urged against this
instruction.   Plaintiffs were bound to stop upon coming out
from between the box-cars only in case they had time and
space within which to do so.   Negligence cannot be imputed
to them by reason of their failure to do an impossible act.

In the J. O. Eaton case defendant interposed a challenge for
cause to W. H. Akers as a proposed juror in the case.   The
challenge was denied and the ruling is assigned as error.
While the ground of the challenge was not stated, we assume
that it was in fact made for alleged bias of the juror appear-
ing from his examination on *voir dire*.   He testified that he
had crossed defendant's tracks at Milpas Street, and when
defendant's yard was filled with cars he regarded the crossing
unsafe.   He was then asked the question whether, if he were
in defendant's place, he would like to have a man with his
knowledge and opinion about the crossing try his case, to
which he replied ''No,'' and stated: ''I will tell you, Mr.
Starbuck, I don't know much about that thing one way or
another.   I know where the crossing is and all I know is
what I have read in the papers.   I have no opinion one way
or the other as far as that's concerned.''   In reply to the ques-
tion as to why he would not like to have one with his knowl-
edge of the crossing try the case, he replied: ''What I said,
on account of the crossing.''

''Q. You think that a man in your state of mind wouldn't
try it fairly?   A. Certainly I would take the evidence and the
instructions of the court.''

Further examination by the court elicited the following:

"Q. Do you feel that your familiarity with that crossing would probably influence your verdict? A. No, I do not. I have been across; I don't go there very often. I know how it has been—I have been there once or twice, but I don't use that road very often. Q. With that knowledge, would you probably consider what you know about it in reaching a verdict? A. No, sir. Q. It wouldn't influence you at all in arriving at a verdict—you would disregard that? A. Certainly, it would not. Q. You wouldn't use it as a means for reaching your verdict? A. No, sir. Q. And would that knowledge that you have now cause you to feel any prejudice in this case or bias? A. No, sir, it wouldn't cut any figure at all, that's certain. I don't know how it was at the time these people passed there. Sometimes you go across there and it is perfectly open and other times it's different." It further clearly appeared that the witness had no prejudice against defendant, that he knew nothing about what the condition of the yard tracks or the crossing was at the time of the accident, and he stated that his verdict would rest entirely upon what the evidence showed the condition to be at the time. The question as to bias of a proposed juror is one of mixed fact and law, and where there is a conflict of evidence touching the question, the conclusion of the court thereon, like the determination of any other fact found upon conflicting evidence, is final. "Whether a prospective juror is fair and impartial and should be allowed to sit in the case is a mixed question of law and fact to be determined in the first instance by the trial judge. This court should interfere with the determination of that question only when the evidence adduced on the *voir dire* is of such a character that it can be said from it, as a matter of law, that the juror is so prejudiced or biased in the case that he will not be a fair juror." (*Graybill* v. *De Young,* 146 Cal. 423, [80 Pac. 618].) It is apparent, we think, from the evidence of Akers that he was unbiased, and since he stated that he would reach a verdict upon the evidence adduced and be guided by the instructions of the court in his consideration thereof, we cannot say as a matter of law that the court was wrong in concluding that Akers would be a fair and unbiased juror.

Excessive speed was not an issue in the case, and while it appeared that the collision occurred within the corporate

limits of the city, there was no evidence as to whether or not the vicinity was open and sparsely settled. Hence, the court did not err in refusing defendant's request to instruct the jury in the J. O. Eaton case that "there is no law of this state regulating the speed of railroad trains while running through sparsely settled country. A speed of fifteen or even twenty miles an hour is not of itself negligent." Nor, for like reasons, was it error to refuse to give an instruction as follows: "No unusual speed of the engine could have misled the plaintiff unless he saw or heard the engine and undertook to cross ahead of it, and to make such an attempt and fail is conclusive evidence of contributory negligence."

The giving of an instruction to the effect that the omission to ring the locomotive bell, as required by section 486 of the Civil Code constituted negligence on the part of defendant for which the company, in the absence of contributory negligence, would be liable in damages, "if the accident occurred by reason of such neglect," is sustained by a number of authorities. (See *Orcutt* v. *Pacific Coast Ry. Co.*, 85 Cal. 291, [24 Pac. 661] ; *Driscoll* v. *Cable Ry. Co.*, 97 Cal. 553, [33 Am. St. Rep. 203, 32 Pac. 591] ; *Wheeler* v. *Oregon R. & N. Co.*, 16 Idaho, 375, [102 Pac. 347] ; *McNulty* v. *St. Louis & S. F. R. Co.*, 203 Mo. 475, [101 S. W. 1082].) Section 486 of the Civil Code provides that "the corporation is liable for all damages sustained by any person, and caused by its locomotives, train, or cars, when the provisions of this section are not complied with." This, of course, is subject to the qualifications stated in the instruction, that the accident is due to such failure and there shall be an absence of contributory negligence.

In the Jennie Eaton case defendant's request that the court instruct the jury that : "The track of a steam railroad must itself be regarded as a sign of danger, and if the traveler would have seen the engine if he had looked, the very fact of injury will raise a presumption that he did not look and was therefore guilty of contributory negligence," is fully covered by instruction 26, wherein the jury were told that: "The railroad track of a steam railway must itself be regarded as a sign of danger, and one intending to cross must avail himself of every opportunity to look and to listen for an approaching train. What he must do in such case will depend upon circumstances.

If the view of the track is obstructed he should take greater pains to listen.''

Complaint is made that the court erred in refusing to give other instructions requested by defendant. An examination, however, of the instructions given shows that the subject of these requested instructions was fully and properly covered by instructions elsewhere given.

As heretofore stated, the engineer was not on the engine at the time of the accident, having left the same, soon after leaving the yard office, in charge of the fireman. Upon examination he was asked the question: ''Is there anything that you know of that he (the fireman) could have done that he didn't do?'' Plaintiffs' objection to this question was sustained and the ruling is assigned as error. The answer called for the very question that the jury were to pass upon, and, if permitted, would have usurped the province of the jury. ''The question whether on not the plaintiff had used proper care and caution in doing his preparatory work was one for the determination of the jury from all the evidence. It was not a question upon which the opinions of expert witnesses are allowable.'' (*Arnold v. California S. P. Cement Co.*, 161 Cal. 522, [119 Pac. 913]; *Central of Georgia Ry. Co.* v. *Bagley*, 121 Ga. 781, [49 S. E. 780].) Moreover, the accident occurred at a point upwards of a half mile from where the engineer left the locomotive, and aside from the fact that he could not know, save from hearsay, what precautions the fireman had taken to avert the accident, his answer must have been a mere conclusion.

Lastly, appellant contends that the court erred in permitting J. O. Eaton to exhibit to the jury his injured arm, since the fact of the injury alleged in the complaint had been admitted by the answer, and the effect of such exhibition was only to excite the sympathies of the jury. The contention is without merit. Conceding that plaintiff might have rested his case upon the admission made by defendant, prejudicial error cannot be predicated upon the fact that plaintiff was permitted to make proof of that which defendant had admitted. (*Curran* v. *Kennedy*, 89 Cal. 98, [26 Pac. 641]; *Brandt* v. *Krogh*, 14 Cal. App. 39, [111 Pac. 275].)

In our opinion, the trials of the cases appear from the records to have been singularly free from error. The instructions given to the jury were full and fair, and three different

juries upon substantially the same evidence came to the same conclusion.

The judgment entered and the order made denying defendant's motion for a new trial in each case is affirmed.

Allen, P. J., and James, J., concurred.

A petition to have the causes heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 5, 1913.

Beatty, C. J., dissented from the order denying a rehearing in the supreme court.