[L. A. No. 3449. In Bank.—August 6, 1915.]

O. G. GRIFFIN, Respondent, v. SAN PEDRO, LOS AN-
GELES & SALT LAKE RAILROAD COMPANY (a
Corporation), et al., Appellants.

[L. A. No. 3641. In Bank.—August 6, 1915.]

O. G. GRIFFIN et. al., Respondents, v. SAN PEDRO, LOS
ANGELES & SALT LAKE RAILROAD COMPANY (a
Corporation), et al., Appellants.

NEGLIGENCE — PERSONAL INJURIES — RAILROAD CROSSING — DUTY OF
TRAVELER.—It is the duty of a traveler on a highway approaching
a railroad crossing to use ordinary care in selecting a time and
place to look and listen for coming trains; he should stop for the
purpose of making such observations when necessary, and it is his
duty to use all his faculties, and it is not enough if he merely
listens believing that the people in charge of any approaching
engine will ring a bell or sound a whistle.

ID.—COLLISION BETWEEN TRAIN AND AUTOMOBILE—CONTRIBUTORY
NEGLIGENCE.—In this action to recover for injuries resulting from
a collision between the plaintiff's automobile and a rapidly moving
train, the evidence is held to show a want of reasonable care in
approaching the railroad crossing, which amounted as matter of
law to contributory negligence barring a recovery.

ID.—RAILWAY TRACK—SIGN OF DANGER—CARE REQUIRED IN CROSSING.
A person approaching a railway track, which is itself a warning
of danger, must take advantage of every reasonable opportunity to
look and listen, and the fact that the crossing is where ordinarily
the engineer gives appropriate signals of the approach of the
trains, does not justify the traveler in depending upon such cus-
tom or even upon a duty, enjoined by law, to give such signals.

APPEALS from judgments of the Superior Court of San
Bernardino County. Frank F. Oster, Judge.

The facts are stated in the opinion of the court.

Pennell Cherrington, Leonard & Surr, Wilfred M. Peck,
and A. S. Halsted, for Appellants.

E. B. Drake, for Respondents.

MELVIN, J.—These appeals were examined by Department two and an opinion was handed down. Subsequently a petition for rehearing was granted in order that the court might devote additional study to the questions involved. After further consideration the opinion rendered in Department is adopted as the opinion of the court. It is as follows:

The appeals from the judgments against defendants in both of these cases may be considered in one opinion as all of the causes of action arise out of the same accident. One suit was by O. G. Griffin for damages which, it was alleged, he suffered by reason of defendant corporation's negligence in the operation of one of its trains, resulting in the deaths of his two minor children and in serious bodily injury to his wife and to himself. He sued for damages for the death of each child, for his own injuries, and for loss of service of his wife and for the expenses of her illness. The other action was by the husband and wife, as plaintiffs. Compensation was demanded because of the injuries suffered by her. In the one case judgment was given for five thousand dollars; in the other for seven thousand five hundred dollars.

According to the testimony of O. G. Griffin, he was returning from Beaumont to his home in South Pasadena on November 24, 1911. He was driving his own automobile. He was a man of years of experience with motor cars. In the automobile with him were his wife, two infant sons, his wife's sister and a Mr. Carter. At about twenty minutes after one o'clock in the afternoon he approached the crossing of the public highway and the railroad tracks of the defendant corporation. This was at a place in San Bernardino County near Colton. While he was attempting to cross the track his automobile was struck by a rapidly moving train. There was a conflict of evidence regarding the conduct of the engineer and fireman in the matter of whistling for the crossing or ringing the bell, but for the purposes of considering the contention made by the railroad company we must assume that its servants failed of their duty in that regard. Counsel for the defense contend that assuming the culpability of the servants of the corporation in failing to blow the whistle or ring the bell, nevertheless the contributory negligence of the plaintiff O. G. Griffin appears so clearly from the undisputed facts surrounding the accident that the judgments should be reversed.

Mr. Griffin testified that the railroad track runs almost north and south at the place where the accident occurred and that the highway crosses it at right angles. Of the weather and the opportunity for clear observation of physical objects he said: "It was a beautiful day; there was a little wind blowing, a breeze from the north; other than that it was what I would call a beautiful day, but no dust or anything blowing. There was nothing in the air to obscure the vision. Before getting to the railroad we climbed a grade and wound around until we came into this public highway running east and west across the railroad track." From the place where he turned the automobile into the road to approach the track from the east there was a heavy down grade nearly all the way. In some places the motor car would run by gravity. Speaking of the automobile Mr. Griffin said: "It makes practically no noise at all; the engine was in perfect working order, and I had gone over the motor that morning, all over the steering apparatus and brakes, and I tightened the brakes very tight to avoid any possible chance of danger. The motor is what they call the engine. The brakes were tightened and would hold the car. It was a gasoline machine, and had a foot brake and a hand brake for emergency." He also said: "As we approached the crossing my wife was nursing the baby at her breast. There was not sufficient dust to interfere with that. For that reason I was driving slowly, I could drive it down to three or four miles an hour. As you approach the east and west road, it is level for some distance back. As I approached the east and west road, the brakes were tight enough to control the car." The automobile was without a top and there was nothing on the car itself to obstruct the view of the driver. As he approached the track there was to the left or south of him a plaster house which completely shut off his view toward the south. West of this house was a fence seventeen feet long on the side toward the highway and six feet six inches high which also obstructed his vision toward the south. From the corner of this fence to the east rail of the track was seventeen feet. There were buildings and trees south of the highway and east of the track so located that it was impossible for one approaching on that road to get a clear view of the railway track to the south until he passed the corner of the fence seventeen feet from the track. The slope of that seventeen feet of road from a point opposite the corner of the fence

to the track was nine-tenths of a foot.   The seat occupied by Mr. Griffin was eight feet from the front of the automobile. The locomotive extended east of the track approximately three feet.   If, therefore, he had stopped at a point where his head would have been sixteen feet from the track there would have been five feet between the front of his car and the zone of danger from a locomotive and he could have obtained from that point an unobstructed view of the rails for a distance of approximately twelve hundred feet.   Instead of stopping to look when he reached this first available place for seeing, Mr. Griffin chose to bring his automobile to a standstill at a point about thirty-five feet east of the track where it would be impossible to see a train approaching from the south.   At this point he stopped to listen and to look for smoke.   Hearing no noise and perceiving no smoke he started to cross the track. "When I got to a point seventeen feet east of the rail," he said, "I saw the train coming right at me about 150 feet away. I threw on the foot brake with all my power and grabbed the emergency brake to stop the car.   At the time I first saw the train, when I was seventeen feet from the track, the automobile engine was running, but was not pulling the car and was using no power, but was simply rolling down.   The running of the engine of the automobile didn't interfere with my hearing.   When I applied the brakes, as I described, the automobile stopped just as it got to the railroad track, and in a few seconds it was hit.   The train was going from 45 to 50 miles an hour."

From these facts it is clear that Mr. Griffin neglected the simplest and plainest precautions for the safety of himself and the others in the automobile.   It is the duty of a traveler on a highway approaching a railroad crossing to use ordinary care in selecting a time and place to look and listen for coming trains.   He should stop for the purpose of making such observations when necessary.   It is his duty to use all of his faculties and it is not enough if he merely listens, believing that the people in charge of any approaching engine will ring a bell or sound a whistle.   In this case counsel for both sides have introduced as exhibits, photographs of the roads and tracks in the vicinity of the crossing and these have been of very great value to us in our endeavors to understand the situation in which Mr. Griffin was placed.   Looking at those pictures we marvel that any veteran automobilist could have been struck

by a train as he was. It is true that he had never made a crossing at that place before. But he knew that the track was there and that it was in use, for he had seen a southbound train pass that point a short time before. As he approached the track, ahead of him a little to the left of the roadway loomed a post bearing the words painted upon it "Look Out for the Cars." To the upper part of this were attached cross boards inscribed with similar letters, "Railroad Crossing." Stopping thirty-five feet from the crossing and trusting to his sense of hearing, when he might have obtained a clear view of the track by moving eighteen feet and a few inches nearer, clearly indicates negligence. True, he testified that he also looked for smoke, but as the breeze was, he said, from the north he could not well expect to see the smoke of a rapidly approaching northbound train. He had his car under perfect control. The brakes had been tightened that day. He was running at a very low rate of speed and it would have been easy for him to stop a short distance beyond the fence corner at a place of complete safety and one well suited to observation. Failing to do this amounts to contributory negligence on his part.

A person approaching a railway track, which is itself a warning of danger, must take advantage of every reasonable opportunity to look and listen. (*Holmes* v. *South Pacific Coast Ry. Co.*, 97 Cal. 167, [31 Pac. 834]; *Green* v. *Los Angeles etc. R. R. Co.*, 143 Cal. 37, [101 Am. St. Rep. 68, 76 Pac. 719]; *Hutson* v. *Southern Cal. Ry. Co.*, 150 Cal. 704, [89 Pac. 1093].) A traveler who is about to cross a railway track at a place where ordinarily the engineer gives appropriate signals of the approach of the train, may not depend upon such custom or even upon a duty, enjoined by law, to give such signals. "He has no right not to look or listen because he has heard no such signals." (*Erie Ry. Co.* v. *Kane*, 118 Fed. 234, [55 C. C. A. 129], cited in *Hutson* v. *Southern Cal. Ry. Co.*, 150 Cal. 704, [89 Pac. 1093].) The same doctrine is announced in *Herbert* v. *Southern Pacific Co.*, 121 Cal. 232, [53 Pac. 651], a case in which the negligence of the railroad company's servants in omitting the usual signals was admitted, and in *Koch* v. *Southern Cal. Ry. Co.*, 148 Cal. 680, [113 Am. St. Rep. 332, 7 Ann. Cas. 795, 4 L. R. A. (N. S.) 521, 84 Pac. 176], one in which the negligence of the defendant in leaving open the safety gates at a crossing was not held to excuse plaintiff's

failure to take any precautions in his attempt to cross the track.   (See, also, *Heitman* v. *Pacific Electric Ry. Co.*, 10 Cal. App. 398, [102 Pac. 15] ; *Wilkinson* v. *Oregon Short Line R. Co.*, 35 Utah, 110, [99 Pac. 466] ; *Bates* v. *San Pedro, L. A. & S. L. R. Co.*, 38 Utah, 569, [114 Pac. 527].)

Respondent insists that this is one of the classes of cases in which the question of negligence is for the jury· He cites *Cooper* v. *Los Angeles Terminal Ry. Co.*, 137 Cal. 229, [70 Pac. 11] ; *Bilton* v. *Southern Pacific Co.*, 148 Cal. 445, [83 Pac. 440] ; and *Antonian* v. *Southern Pacific Co.*, 9 Cal. App. 718, [100 Pac. 877].   These cases are easily distinguishable from the one at bar.   In the Cooper case the plaintiff had stopped her carriage a short distance from the track where she would have a clear view of the rails in either direction. Here she looked and listened.   She then proceeded on her way but her view was cut off by a tree and the defendant's railroad station.   In the Bilton case the young man who was driving the horse attached to a grocery wagon, brought his horse to a walk as he reached a place where he could see the track and then momentarily paused, facing partially in the direction from which the train was coming.   In the Antonian case the rider of the bicycle looked and listened for trains. It was night.   His view was also obstructed by the shadows of cars standing on the tracks and just before the unlighted freight car came silently upon him a watchman called to him and distracted his attention from the danger which he might have seen otherwise.

So in *Eaton* v. *Southern Pacific Co.*, 22 Cal. App. 461, [134 Pac. 801], the view was obstructed by box cars and the court held that ''plaintiffs were bound to stop upon coming out from between the box cars only in case they had time and space within which to do so. .Negligence cannot be imputed to them by reason of their failure to do an impossible act.''   In the cases at bar, Griffin had ample time to stop and look after passing the corner of the fence seventeen feet from the track. *Vance* v. *Santa Fe*, 9 Cal. App. 20, [98 Pac. 41], is similar in its facts to the Eaton case.   Defendant had obstructed the view with its cars, on a siding.   The court, while asserting the duty of a traveler to look and listen when nearing a railroad crossing held that the obligation to look is only enjoined when by its exercise the approaching train could have been discovered.

In *Martin* v. *Southern Pacific Co.*, 150 Cal. 124, [88 Pac. 701], it was a question, in view of the physical facts about which witnesses had testified, whether or not plaintiff could have seen the approaching train from the corner of the warehouse which was located on defendant's right of way.  In this case Mr. Griffin admits that he could have seen any approaching train after passing the corner of the fence.  In *Tousley* v. *Pacific Electric Ry. Co.*, 166 Cal. 458, [137 Pac. 31], and *Loftus* v. *Pacific Electric Ry. Co.*, 166 Cal. 465, [137 Pac. 34], the opportunity for seeing the oncoming train as the driver of the automobile approached the track was lessened by obstructions to his view offered by a railway station and the rows of trolley poles.  He did stop, look, and listen at the last place which seemed to him to be effective for that purpose. The court held that the jury had the right to believe from plaintiff's story that he took every opportunity to learn of the approach of the train.  In this case plaintiff O. G. Griffin unquestionably could have seen the train if he had stopped at a point only a few feet from that at which he did pause.

As the undisputed evidence shows that O. G. Griffin was guilty as matter of law of contributory negligence, the judgments must be reversed and it is so ordered.

Henshaw, J., Lorigan, J., and Shaw, J., concurred.

ANGELLOTTI, C. J., dissenting.—I dissent.  The negligence of the defendants is admitted for all the purposes of this appeal, and the only question for our consideration is whether the evidence is legally sufficient to sustain the conclusion of both the jury and the trial judge to the effect that plaintiff was not guilty of contributory negligence.  It seems very clear to me that the evidence was such as to sufficiently sustain this conclusion.

In considering such a question as is here presented we must bear in mind a rule well settled by our decisions.  As was said in *Seller* v. *Market Street Ry. Co.*, 139 Cal. 268, [72 Pac. 1006]: ''It has often been said by this court that it is very rare that a set of circumstances is presented which enables a court to say, as a matter of law, that negligence has been shown.  As a general rule it is a question of fact for the jury, an inference to be deduced from the circumstances of each particular case, and it is only where the deduction to be drawn

is inevitably that of negligence that the court is authorized to withdraw the question from the jury. This is true even where there is no conflict in the evidence, if different conclusions upon the subject can be rationally drawn therefrom. If the conceded facts are such that reasonable minds might differ upon the question as to whether or not one was negligent, the question is one of fact for the jury. These rules are so well settled as to render it unnecessary to here do more than state them." In *Herbert* v. *Southern Pacific Co.*, 121 Cal. 229, [53 Pac. 651], it was said: "If but one conclusion can reasonably be reached from the evidence, it is a question of law for the court; but if one sensible and impartial man might decide that the plaintiff had exercised ordinary care, and another equally sensible and impartial man, that he had not exercised such care, it must be left to the jury. Our ideas as to what would be proper care vary according to temperament, knowledge, and experience. A party should not be held to the peculiar notions of the judge, as to what would be ordinary care. That only can be regarded as a standard or rule which would be recognized or enforced by all learned and conscientious judges, or could be formulated into a rule. In the nature of things no such common standard can be reached in cases of negligence, where reasonable men can reach opposite conclusions upon the facts." Considering the evidence in the light of these well established rules I can see no warrant for any interference with the action of the jury and the trial court. Viewing the evidence in the light most favorable to plaintiff, as we must in view of the verdict and the action of the trial judge, the following facts must be accepted as established: Neither Mr. Griffin nor any one of his party had ever been over this road before, and he was unacquainted with the situation of the approach to the crossing. The fence preventing any view of the railroad track south of the crossing or any train thereon, to any one traveling in an automobile along the highway from the east toward the crossing, as Mr. Griffin was doing, terminated not more than sixteen feet from the east rail of the railroad, the side of the locomotive projected over the east rail three feet, and plaintiff's seat in the automobile was eight feet from the front of the machine, leaving a space of not more than five feet between the point from which a train approaching from the south could be seen and the railroad track within which to stop the machine in a place of

safety.    There was no indication of an approaching train at any time prior to the automobile reaching a point from which the view of the track to the south was obstructed by the house and fence.    Mr. Griffin who had theretofore been driving very slowly stopped his machine absolutely at a point thirty-five feet from the railroad track for the purpose of listening, and at that point there was no indication to him of any approaching train.    He then allowed his machine to roll down the grade toward the crossing, using no power, at a rate of from three to four miles an hour and heard or saw nothing to indicate the approach of a train until he reached a point from which he could see the railroad track to the south of the crossing. He then for the first time discovered that a train was approaching.    There is nothing to compel a conclusion that he was negligent in not having before observed the approach of the train.    The space of safety beyond the obstruction was so narrow, not more than five feet, that it is by no means apparent that Mr. Griffin should have observed its existence at any time before reaching the end of the obstruction to his view. He should, of course, have been prepared to stop his machine, if necessary, at the last place before crossing the track, which a reasonable man in his position and with his knowledge would have deemed effective for the proper observance of the track. In all other respects, it is practically admitted that he exercised every precaution.    Unfamiliar with the conditions at the crossing, as has been said, it is not apparent or evident, in view of the extreme narrowness of the zone of safety, that he should have observed that there was any point between him and the track that would be effective for such observation. Under such circumstances, unless it is to be held that the situation was such, as matter of law, as to require him or one of his companions to dismount from the machine, go forward on foot and ascertain the actual situation, he could do only what he did, proceed at the slowest possible pace, listening and looking for any indication of an approaching train.    I am satisfied that the situation here was not such, in view of all the circumstances, as to enable the court to say as matter of law that it was essential to the exercise of reasonable care on his part that any such inspection on foot should be made. No such precaution has ever been declared essential in this state as to the driver of a vehicle about to cross a railroad track.    To the contrary, the decisions in this state are uni-

formly to the effect that the obligation to look up and down the track is only enjoined where by observation from the vehicle, the approaching train could be detected. (See *Martin* v. *Southern Pacific Co.*, 150 Cal. 124, [88 Pac. 701] ; *Vance* v. *Atchison etc. Ry. Co.*, 9 Cal. App. 20, [98 Pac. 41] ; *Eaton* v. *Southern Pacific Co.*, 22 Cal. App. 461, [134 Pac. 801].) The point was necessarily involved, though not discussed, in *Loftus* v. *Pacific Electric Ry. Co.*, 166 Cal. 464, [137 Pac. 34], where the conclusion of a jury that one driving an automobile which came into collision at a crossing with an electric train was not guilty of contributory negligence, was held to have sufficient support in the evidence. It may be conceded that the circumstances of the case may be such as to render such a precaution essential, but here I am satisfied that the question was one solely for the jury and trial judge. The case just cited, in so far as obstructions to view of the track and precautions observed by the plaintiff are concerned, is very similar in principle to the case at bar, and sustains our conclusions on the question of contributory negligence. In view of the facts disclosed by the record therein, the same is true of *Cooper* v. *Los Angeles Terminal Ry. Co.*, 137 Cal. 229, [70 Pac. 11]. I know of no California case warranting a contrary conclusion, and it seems to me that the decision of the court in this case is a departure from the well established rule relative to the conclusiveness on appeal of the findings on questions of fact in the trial court in this class of cases, where the evidence is such that reasonable men might well differ on the question of negligence.

I am of the opinion that the judgments should be affirmed.

Sloss, J., concurred.